

1  THOMAS H. BIENERT, JR., SBN 135311
   STEVEN L. KRONGOLD SBN 125952
2  JOEL M. WEINSTEIN SBN 213016
   BIENERT & KRONGOLD
3  115 Avenida Miramar
   San Clemente, California 92672
4  Telephone (949) 369-3700
   Facsimile (949) 496-6753
5
   Attorneys for Defendant and Movant
6  KENNETH KETNER
7
8              UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA
10
11  UNITED STATES OF AMERICA,          Case Nos.  05-CR-36-ALL
12              Plaintiff,             Judge James V. Selna
13        v.                           DEFENDANT KENNETH KETNER'S
                                        NOTICE OF MOTION AND MOTION
14                                      TO IDENTIFY AND COMPEL
   KENNETH KETNER, and                  DOCUMENTS AND EXCULPATORY
15  ALLEN JOHNSON                       EVIDENCE; MEMORANDUM OF
                                        POINTS AND AUTHORITIES IN
16                                      SUPPORT THEREOF
17                                      Date:  September 19, 2005
                                        Time: 9:00 a.m.
18                                      Ctrm: 10C
19
20
21        Defendant Kenneth Ketner ("KETNER"), through his undersigned counsel of record,
22  hereby gives notice that on September 19, 2005 at 9:00 a.m., or as soon thereafter as the matter
23  can be heard by the court, in courtroom 10C of the above entitled court will and hereby does
24  move for an order requiring that the government do the following:
25        1.  Immediately disclose all potentially material recordings, transcripts, reports and notes
26            resulting from, regarding, referring or relating to the investigation and prosecution by
27            the Government of KETNER's case, including any exculpatory or favorable evidence.
28

                                         1
   NOTICE AND MOTION TO COMPEL DOCUMENTS AND EXCULPATORY EVIDENCE

2.  Identify all documents and other items that the government intends to mark as exhibits or to use during examination of witnesses;

3.  Identify all documents or evidence that potentially contains <u>Brady</u> information;

4.  Identify all documents or evidence that potentially contains <u>Giglio</u> information; and

5.  Provide all of the documents referred to in the indictment.

This motion is brought pursuant to Rules 12 and 16 of the Federal Rules of Criminal Procedure, <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), <u>Giglio v. United States</u>, and the Fifth and Sixth Amendments to the United States Constitution. This motion is based upon the instant notice of motion and motion, the attached memorandum of points and authorities in support thereof, the records and files in this action, and any and all other matters that may be presented prior to or at the time of the hearing.

DATED: September 12, 2005                    BIENERT & KRONGOLD

By: _____
            THOMAS H. BIENERT, JR.
            STEVEN L. KRONGOLD
            JOEL M. WEINSTEIN
      Attorneys for Defendant KENNETH KETNER

## MEMORANDUM OF POINTS AND AUTHORITIES

## I   INTRODUCTION

Defendant Kenneth Ketner ("KETNER") is charged in a six- count indictment with Bank Fraud, Honest Services Wire Fraud, Wire Fraud, Money Laundering Conspiracy, Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activities, and Aiding and Abetting.  Essentially, the indictment alleges that KETNER committed these various crimes by arranging for loans on properties funded by and through Mortgage Capital Resource Corporation, a California Corporation ("MCR") through various means to the detriment of creditors Household Commercial Financial Service a warehouse lender based in Illinois ("Household") and Republic Bank, a bank insured by the Federal Deposit Insurance Corporation ("Republic").

Based on the charges in the matter, an important evidentiary aspect of the case will be the degree to which KETNER, who was at times the head of MCR but involved in many other projects as well, had knowledge of certain financial transactions and loans.  Thus, witness testimony regarding KETNER's business practices and actual knowledge of particular transactions and loans is significant.  Any information suggesting that KETNER lacked involvement or knowledge in relevant practices or transactions is exculpatory as it tends to negate knowledge of the alleged wrongdoing.

Based on the allegations and charges in this matter, KETNER believes that the government will call several witnesses at trial to testify about whom there is significant evidence of wrongdoing.  Those witnesses include Val Benincosa, Randy Bristol and Alan Johnson.  Yet, to date the government has not identified a single document or item that it expects to introduce at trial.  Instead, the government claims it has not one piece of exculpatory evidence in this case. In fact, other than some reports related to Alan Johnson that this Court ordered disclosed as part of an unrelated prior motion, the government has produced *no reports* or potential impeachment information regarding any witnesses.

What the government has produced instead is a partial "discovery dump" where, after disclosing its possession of the some fifty-one boxes of documents that will ultimately be

3

discoverable, it produced 36 of them and refuses to produce the other 15 or any information from them.  The government claims that all of the additional fifteen boxes include work-product and information that need not be produced.

Defendant is informed and believes that the government has exculpatory information, including witnesses who provided evidence of. KETNER's non-involvement in relevant matters and impeachment information for its witnesses.  Furthermore, defendant contests the government's view that it need not produce evidence prepared and presented to the grand jury or that will ultimately be produced at trial.  Defendant should not be required to sift through dozens of boxes of documents in order to first identify the evidentiary basis of the government's case so that he can defend himself.

Defense counsel and government counsel have addressed these issues and have been unable to resolve them, warranting the filing of this motion.

## II.    THE PROSECUTION HAS AN OBLIGATION TO DISCLOSE AND IDENTIFY ALL INFORMATION MATERIAL TO THE CASE, INCLUDING ITEMS IT INTENDS TO USE AT TRIAL, EXCULPATORY EVIDENCE AND INFORMATION THAT COULD EFFECT THE CREDIBILITY OF THEIR WITNESSES

Rule 16 requires the government to disclose, upon the defense's request, items "material to preparing the defense," as well as items the government "intends to use in its case-in-chief." Fed.R.Crim P. 16(a)(1)(E)(i)&(ii); see also United States v. Reeves, 892 F.2d 1223, 1226 (5th Cir. 1990); United States v. Vue, 13 F.3d 1206, 1208 (8th Cir. 1994).  This "rule is intended to prescribe the minimum amount of discovery to which the parties are entitled.  It is not intended to limit the judge's discretion to order broader discovery in appropriate cases."   Advisory Committee Note on 1974 Amendment to Rule 16 (emphasis added).

The government is in possession of dozens of boxes of evidence and should be ordered to disclose to defendant items it intends to use at trial.  Failure to make such disclosures is precluding defendant from adequately preparing for his defense.

The due process clause of the United States Constitution, Rule 16 of the Federal Rules of Criminal Procedure, as well as case law, impose a duty on the prosecution to disclose to the defense upon request, any information favorable to the accused within the prosecutor's

4

1   possession, either actual or constructive, that is material to defendant's guilt or to sentencing.

2   Brady v. Maryland, 373 US 83, 87 (1963)  see also United States v. Bagley, 473 U.S. 667, 682

3   (1985).  This principle imposes upon prosecutorial authorities a strict duty to disclose and

4   identify all material evidence favorable to the defense whether or not it relates directly to the

5   question of guilt and whether or not a request for a disclosure has been made.  Giglio v. United

6   States, 405 U.S. 150 (1972).

7        The prosecution's discovery obligation has been enunciated by the United States

8   Supreme Court:

9        The State's obligation is not to convict, but to see that, so far as possible, truth
10       emerges. This is also the ultimate statement of its responsibility to provide a fair trial
         under the Due Process Clause of the Fourteenth Amendment. No respectable interest of
11       the State is served by its concealment of information which is material, generously
         conceived, to the case, including all possible defenses
12

13  Giles v. Maryland, 386 US 66, 98 (1967).

14       In this instance, since the rule announced in Brady is premised on defendant's right to

15  receive a fair trial, the government should be required to adopt a more liberal approach to

16  disclosure in this case.  Brady, 387 U.S. at 87; see also Kyles v. Whitley, 514 U.S. 419, 439

17  (1995) ("[A] prosecutor anxious about tacking too close to the wind will disclose a favorable

18  piece of evidence...This is as it should be."); United States v. McVeigh, 954 F. Supp. 1411 (D.

19  Colo. 1997) (Matsch, J.) ("Due Process requires the government lawyers to resolve their doubts

20  in favor of disclosure.").  Such an approach is necessary both to ensure "that justice shall be

21  done," and "to preserve the criminal trial, as *distinct from the prosecutor's private deliberation*,

22  as chosen forum for ascertaining the truth about criminal accusations."  Kyles, 514 U.S. at 439-

23  40 (emphasis added).

24       Moreover, the prosecution has a duty to learn of and obtain all favorable evidence in the

25  possession of others acting on their behalf, including the police. Kyles v. Whitley, 115 S. Ct.

26  1555, 1567 (1995); United States v. Wood, 57 F.3d 733, 737 (9th Cir. 1995) (prosecutor is

27  charged with knowledge of material known to FDA).  The test for materiality is whether the

28

requested evidence *might* affect the outcome of the trial.  United States v. Agurs, 427 US 97

(1976).  This includes evidence which could affect the credibility of any government witness.

See Giglio, 405 U.S. 150, 154.  Further, it includes evidence of bias, motive to lie or exaggerate,

prior bad acts of dishonesty or prior criminal convictions.  See Generally United States v. Able,

469 U.S. 45 (1984).  Accordingly, evidence favorable to KETNER includes not only evidence

tending to exculpate him, but any information that tends to impeach the government's evidence

or witnesses.  See Giglio, 405 U.S. at 154; Bagley, 473 U.S. at 676.  Such evidence should

include:

- The complete criminal history of any witness the government plans to use at trial.  Brady v. Maryland 373 U.S. 83 (1963).

- Any evidence that a witness has made a false statement, whether or not under oath.  U.S. v. Strifler 851 F.2d 1197 (9th Cir., 1988)

- Any evidence that a witness has made any inconsistent, contradictory or false statements, including any other evidence show bias or motive to fabricate by the informant.  Pennsylvania vs. Ritchie 107 S.Ct. 989 (1987); U.S. vs. Steinberg 99 F.3rd 1486 (9th Cir., 1996)

- Any express or implicit promise, understanding, offer of immunity or lesser sentence in exchange for a witness's cooperation in this or any other case, Giglio v. U.S., supra; U.S. vs. Shaffer 789 F.2d 682 (9th Cir. 1986), together with copies of any plea bargain or agreement regarding said cooperation.

- All e-mail or electronic data in any form involving the witnesses and/or defendant.  18 U.S.C §2510-2520; 18 U.S.C §3504.

- All electronic surveillance of the defendants in any form, together with any wiretaps and accompanying applications. Id.

- All recordings, including electronic, written, or otherwise, of any conversations involving any witnesses and/or defendants.

6

**NOTICE AND MOTION TO COMPEL DOCUMENTS AND EXCULPATORY EVIDENCE**

The government has not produced such materials in this case. Thus far, it has primarily limited its production to documents seized by agents from various locations. In doing so, it is concealing notes and reports of agents in this case, including potentially exculpatory evidence and the references to potentially exculpatory witnesses contained therein. Included in such exculpatory evidence, is information by witnesses indicating that defendant Ketner was not involved in certain financial aspects of MCR.

## III.   THE GOVERNMENT'S "DISCOVERY DUMP" OF DOZENS OF BOXES, WHITHOUT IDENTIFYING PARTICULAR DOCUMENTS OR INFORMATION, DOES NOT MEET THE GOVERNMENT'S DISCOVERY OBLIGATION

Instead of identifying relevant information required by discovery rules, the government simply granted the defense access to a large voluminous collection of incomplete discovery inviting them to find an exculpatory "needle in a haystack". The Government's position is inconsistent with the fundamental constitutional protections afforded by <u>Brady</u>. The government's duty to comply with <u>Brady</u> is not fulfilled, in cases such as this, where the prosecution buries the defendant with discovery and ignores its duty to expose the truth.

In <u>United States v. Bortnovsky</u>, 820 F.2d 572, 574-575 (2d Cir. 1987), the Second Circuit found:

> We conclude that appellants were hindered in preparing their defense by the district court's failure to compel the Government to reveal crucial information: the dates of the fake burglaries and the identity of the three fraudulent documents.  Appellants were forced to explain the events surrounding eight actual burglaries and to confront numerous documents unrelated to the charges pending.  In effect, the burden of proof impermissibly was shifted to appellants.  *While we commend the Government for cooperating in the turning over of documents prior to trial, we do not look with favor on the manner in which the Government conducted the prosecution. The relevance of key events was shrouded in mystery at the commencement of and throughout the trial. The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged.*

(emphasis added); <u>see also</u> <u>United States v. Turkish</u>, 458 F.Supp.874, 882 (S.D.N.Y. 1978) (granting defense motion directing the government to indicate which of the approximately 25,000 documents relating to the case in the government's possession it intended to use at trial, rather than "bury[ing] the defendant in paper" by merely making all of the documents available.)

**NOTICE AND MOTION TO COMPEL DOCUMENTS AND EXCULPATORY EVIDENCE**

1    In <u>United States v. Poindexter</u>, 727 F.Supp. 1470 (D.D.C. 1989), the government

2 attempted to satisfy its obligations under <u>Brady</u> by turning over large volumes of discovery.

3 According to the <u>Poindexter</u> Court:

> The government has produced documents that it intends to use in its case-in-chief, but defendant contends that, with respect to financial information and various calendar and diary pages, it has done no more than to identify several thousand pages, any of which it "may" rely at trial.   This broad brush approach, defendant contends, is not sufficient to meet its obligations.  The Court agrees.
>
> While the government's case or strategy may change in advance of trial or even during trial, there is no reason why it cannot be more specific as to which documents it currently intends to use, and there are many reasons, grounded in fairness to the defendant, the protection of his rights, and not least Rule 16(a)(1)(C), why it should be.
>
> Within thirty days of the issuance of this Order, the government shall identify with greater specificity those among these thousands of documents in the financial, calendar, and diary areas that it intends to use at trial.  This notification will not prevent the government from later introducing other documents from these materials on a limited scale, but it will give the defendant some notice as to which among the thousands of documents are likely to be part of the government's case-in-chief.

14 <u>Id.</u> at 1484; <u>United States v. Turkish</u>, 458 F.Supp. 874, 882 (S.D.N.Y.1978), aff'd, 623 F.2d 769

15 (2nd Cir.1980).

16    This Court should order the government to honor its duties and produce

17 meaningful discovery by identifying exhibits, <u>Brady</u> and <u>Giglio</u> material.

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28

**NOTICE AND MOTION TO COMPEL DOCUMENTS AND EXCULPATORY EVIDENCE**

## IV.  CONCLUSION

For the foregoing reasons, KETNER, by and through his counsel, respectfully requests that this Court order the government to:

      (1)    Identify the documents it intends to use at trial;

      (2)    Identify and produce all evidence relating to the credibility or bias of witnesses; and

      (3)    Identify and produce all exculpatory evidence and/or potentially favorable to KETNER's defense.

Respectfully submitted,

DATED: September 12, 2005          BIENERT & ~~KRONGOLD~~

                          By: _____

                             THOMAS H. BIENERT, JR.
                             STEVEN L. KRONGOLD
                             JOEL M. WEINSTEIN
                     Attorneys for Defendant KENNETH KETNER

## CERTIFICATE OF SERVICE

I, Janine Philips, declare,

That I am a citizen of the United States and am a resident or employed in Orange County, California; that my business address is 115 Avenida Miramar, San Clemente, California 92672; that I am over the age of 18 and not a party to the above-entitled action;

That I am employed by the Thomas Bienert of Bienert & Krongold who is a member of the United States District Court for the Central District of California, at whose direction I served a copy of **DEFENDANT KENNETH KETNER'S MOTION TO IDENTIFY AND COMPEL DOCUMENTS AND EXCULPATORY EVIDENCE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on the interested parties in this action as follows:

__ **BY MAIL:** I am "readily familiar" with Bienert & Krongold's practice for collecting and processing mail with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at San Clemente, California on that same day following the ordinary business practices addressed to:

__ **BY FACIMILE:** On said date, I caused said document(s) to be transmitted by facsimile. The telephone number of the sending facsimile was (949) 496-6753. The name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list. The document was transmitted by facsimile transmission, and the sending facsimile machine properly issued a transmission report confirming that the transmission was complete and without error.

__ **BY FEDEX:** I deposited such document in a box or other facility regularly maintained by FedEx, or delivered such document(s) to a courier or driver authorized by FedEx with delivery fees paid or provided for, addressed to the person(s) being served as follows:

**X** **BY HAND DELIVERY:** I caused to have delivered such envelope(s) by hand to the office of the person being served via First Legal as follows

### SEE ATTACHED SERVICE LIST

This certificate was executed on September 12, 2005, at San Clemente, California.

I certify under penalty of perjury that the foregoing is true and correct.

_____
Janine Philips

## SERVICE LIST
**USA v. Ketner**
**Case No. 05-CR-36-ALL**

AUSA Andrew Stolper
United States Attorney's Office
Ronald Regan Federal Building, Ste. 8000
411 West Fourth Street
Santa Ana, CA 92701
Tel: (714) / Fax: (714) 338-3708
**Attorneys for USA**