**ORIGINAL**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. SACR05-36-1 |
| ) | |
| Plaintiff, ) | Los Angeles, California |
| ) | |
| vs. ) | Friday, |
| ) | February 17, 2005 |
| KENNETH KETNER, ) | 2:00 p.m. |
| ) | |
| Defendant. ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE MARC L. GOLDMAN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | ANDREW STOLPER, ESQ. |
| For the Defendant: | THOMAS BIENERT, ESQ. |
| Transcript Ordered by: | PHILIPPA SKOW, ESQ. |
| Transcriber: | Briggs Reporting Company, Inc.<br>6336 Greenwich Drive, Suite B<br>San Diego, California 92122<br>(310) 410-4151 |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

```
                                                                    1

 1      LOS ANGELES, CALIFORNIA   FRIDAY, FEBRUARY 17, 2005 2:00 PM
 2                                --oOo--
 3           (Call to order of the Court.)
 4               MR. STOLPER:  Good afternoon, your Honor.  Andrew
 5   Stolper on behalf of the Government.
 6               MR. BIENERT:  Good afternoon, your Honor.  Thomas
 7   Bienert, retained on behalf of Mr. Ketner, who is present in
 8   custody.
 9               THE COURT:  Is there --
10               MR. BIENERT:  Yes, it is, your Honor.
11               THE COURT:  Mr. Ketner, have you retained
12   Mr. Bienert to represent you?
13               THE DEFENDANT:  I have, your Honor.
14               THE COURT:  And Mr. Bienert, have you received a
15   copy of the indictment?
16               MR. BIENERT:  I have, your Honor.
17               THE COURT:  Have you gone over it with Mr. Ketner?
18               MR. BIENERT:  Yes, your Honor.
19               THE COURT:  Mr. Ketner, do you understand what the
20   Government's charged you with?
21               THE DEFENDANT:  Yes, I do, your Honor.
22               THE COURT:  Okay.  What we're going to do at this
23   point is make a bail determination and move on from there.
24   The Government's requested detention, is that right?
25               MR. STOLPER:  That's correct, your Honor.
```

1        THE COURT: Go ahead.
2        MR. STOLPER: The Government proffers the pretrial
3 services report as well as the indictment. As the Court
4 knows from the indictment, Mr. Ketner's charged with
5 disappearing over nine million dollars of money and then
6 laundering some of that money through both Nevis (phonetic)
7 and Luxembourg, returning it to the U.S. to a bank account
8 he established with a fake identification. But, rather than
9 go over the indictment with the Court, I'd like to talk a
10 little bit about what the Defendant's been doing since the
11 alleged offense.
12        Since the Defendant shut down MCR, he declared
13 bankruptcy, and in that bankruptcy petition, your Honor, the
14 Defendant submitted the usual form, and in that form, he did
15 not disclose all the assets, especially the purple
16 file properties that were referred to in the
17 bankruptcy -- excuse me -- in the indictment. And I'll
18 circle around back to why we know the Defendant is still in
19 control of those properties.
20        Once the Defendant declared bankruptcy, a five-
21 million-dollar judgment was found against the Defendant that
22 was nondischargeable by the Bankruptcy Court. The Defendant
23 has so far not paid down a single cent of that judgment, and
24 so, what he's been doing is using shell corporations to live
25 off of in the interim. He first went to work for a place

3

1  called New America Financial where the Defendant earned
2  somewhere between three to four million dollars.  After
3  that, he opened up a business with his mistress, a place
4  called Segway Properties (phonetic) where he continues to
5  earn money.
6          What we've learned by talking with people from
7  both Segway and New America is that the Defendant was
8  receiving this money, that he was basically hiding that
9  money from his creditors who never received any money.  And
10 perhaps the most troubling to the Government, your Honor --
11         THE COURT:  Let me ask you a question.
12         MR. STOLPER:  Sure.
13         THE COURT:  Okay.  I mean, you're painting a
14 picture of an individual who -- all right.  I don't know if
15 that's true or not.  The issue before the Court is whether
16 or not he will appear in court when required.  So, that's
17 what I'd like you focus on.  What evidence or what
18 information do you have for me which shows me that he's a
19 risk of flight, other than the fact that he, based upon your
20 proffer, and all it is is a proffer at this point because I
21 haven't heard any evidence, that he's playing a shell game
22 with the -- money?  And if he is, obviously, you know,
23 that's something I can consider, but I'm looking at the
24 pretrial services report, ties to the community, lack of
25 criminal convictions.  Those are the basic facts that I need

4

1 to be considering.
2         MR. STOLPER:  Yes, your Honor.  There's two
3 important factors that I think are present both in the
4 indictment and even within the pretrial services report.
5 You've got someone who has access or has disappeared
6 countless millions of dollars that, at this point in time,
7 despite a lengthy investigation, we've been unable to
8 determine where every cent went.  And we have someone who
9 has prior --
10         THE COURT:  Have you recovered anything?
11         MR. STOLPER:  We've recovered -- we know there's
12 nine million dollars missing.  We don't know where the money
13 is at this point in time, your Honor.
14         THE COURT:  Okay.
15         MR. STOLPER:  And we know that the Defendant has
16 previously laundered money overseas, and we have reason to
17 believe some that money is still overseas.  Put those two
18 factors together and the Government thinks we have someone
19 who is a very serious risk of flight, because if the
20 Defendant decides to go overseas, he can live comfortably,
21 possibly even indefinitely, without the Government being
22 able to find him.  A few more -- just a few more points --
23         THE COURT:  Go ahead.
24         MR. STOLPER:  I think the Court should know about.
25 In terms of the Defendant being able to make money

5

1 disappear, I think it's important to note that, despite
2 admitting to pretrial services he's making $11,000 a month,
3 and despite evidence that he's made millions since his
4 bankruptcy petition, the Defendant has not filed a tax
5 return in 2000, 2001, 2002 or 2003.  The money is out there
6 sloshing around, your Honor.  Some of it could be overseas.
7 If this Defendant is released, we may not ever see him
8 again.
9         THE COURT:  Mr. Bienert.
10        MR. BIENERT:  Your Honor, this is about as over
11 the top as it gets, I have to tell you.  I'll proffer a
12 couple things.  This has been an active criminal
13 investigation for at least four years.  I have personally
14 been dealing with the U.S. Attorney's Office on behalf of
15 Mr. Ketner for at least four years.  I have personally been
16 dealing with Mr. Stolper for well over a year.  I have
17 talked with him and the agent, Mr. Bonen, about the
18 specifics of this case at least a dozen or more times.  At
19 all times, Mr. Stolper has made clear that it was his
20 intention to bring an indictment.  My client has known about
21 this at all times.  They could have picked up the phone and
22 we would have been in here on a day's notice.  There is zero
23 evidence to consider that he is a realistic flight.  His
24 entire life is here.  His entire relationships are here.
25 Whatever assets he has or doesn't have is here.

6

1    I'd ask that your Honor does look at the
2 indictment because there's some real slight of hand here
3 where they throw around a lot of numbers. But, if you look
4 at them carefully, the numbers that they're really citing is
5 their evidence. Overseas accounts are quite manageable and
6 aren't even evidence of a fraud. The entirety of the
7 overseas accounts information is in paragraph 21 of the
8 indictment, and it's at the bottom of page 12. And it
9 basically talks about the ways that they allege Mr. Johnson
10 and Mr. Ketner divvy up a $450 per loan fee. Now, let's
11 assume that all of that is true.
12          THE COURT: Page 12?
13          MR. BIENERT: Yes, your Honor.
14          THE COURT: I'm sorry.
15          MR. BIENERT: At the very bottom. And if you look
16 at the next page, paragraphs A through whatever, they talk
17 about these purported overseas accounts. The only money
18 that they claim is going overseas, even if all of this is
19 true, is the $450 fee earned on legitimate mortgages. As to
20 whether or not Mr. Johnson and Ketner divvied it up amongst
21 themselves, it's not a fraud, it's not fraudulent proceeds.
22 It's earned money that they can do what they want with, and
23 as long as they handled it right from a tax issue, no
24 problem. They didn't charge a tax case here. So, the
25 overseas accounts come back to traceable, legitimately

7

1 earned money.  And we can quibble over whether he could have
2 gotten a part of it or not, but no one was victimized.
3           Number two, if your Honor continues, the big money
4 that they talked about is at pages -- I'm sorry -- paragraph
5 24, 25, 26 and 27.  Page 14 to 15.  That's where all the
6 millions of dollars come in.  And what's really interesting
7 here is, as the indictment literally says, that money did
8 not go to Mr. Ketner.  That money went to MCR's bank
9 accounts.  MCR was a 500-employee company.  It did 70
10 million dollars worth of loans a month.  The Government
11 knows all this because they've been looking at the books for
12 four years.  The bankruptcy attorneys looked at the books
13 for five years.  There was no evidence that that money went
14 to Mr. Ketner.  It was eaten up in the running of a 500-
15 employee company and that's why the company went bankrupt.
16 Civil liability aplenty.  Lots of issues we can ferret out
17 in a trial on this case.  But, none of that suggests in any
18 way that Mr. Ketner is somehow sitting on mounds of money.
19           So, the money issue is illusory, the officer
20 accounts are illusory.  Finally, you'll notice there's a co-
21 defendant here, Mr. Johnson.  Where is Mr. Johnson today,
22 your Honor?  And I'm sure your Honor noted in reading the
23 indictment, according to the indictment, Mr. Johnson and
24 Mr. Ketner are locked at the hip.  There is no distinction
25 between the two of them.  They both have these millions of

1  dollars. They both did all of that. Mr. Johnson isn't here
2  because he's being summoned in. He's being summoned in
3  because it's my understanding that in the dialogue between
4  his counsel and the Government, he may be considering
5  cooperating with them. And in my ongoing dialogue, I have
6  said, I'm sorry, but my client doesn't believe he's guilty
7  and we're not pleading guilty.
8           The only reason that the Government chose to go
9  out and arrest him and put him through all this is a
10 punitive measure. They want to send a message to Mr. Ketner
11 that they're not happy. That's it. There's no articulable
12 basis for why he's a flight risk. We would have been here
13 had they asked us to. He shouldn't have even gotten
14 arrested today. They certainly sent a message to him that
15 they mean business and that's their prerogative. But, there
16 is nothing to indicate that he's any type of a flight risk
17 at all.
18           We have in the courtroom today Mr. Butcher, who is
19 a life-long friend, who is willing to post up to $300,000 in
20 unencumbered property here in this District. I believe that
21 the probation officer -- I'm sorry -- pretrial services
22 officer, she got it right. He's got ties to the community.
23 He's not a criminal in terms of his history, and all we need
24 is a signature affidavit. We could have had a signature
25 affidavit from Mr. Ketner and he would have been here. So,

1  I would ask the Court to impose a bond that is consistent
2  with what the pretrial services officer rightly recommends.
3  I would ask that Mr. Butcher, since he is here today, be
4  allowed to sign it.  I will represent to the Court that I
5  personally spoke to Mr. Shauer (phonetic), who is a
6  reputable attorney.  He was not able to be here today
7  because he's in -- if the Court wants a supplemental
8  affidavit of surety from him, we can get that as well.
9          THE COURT:  Who is this one?
10         MR. BIENERT:  The second person who indicated they
11 would act as a surety.
12         THE COURT:  All right.
13         MR. BIENERT:  He just couldn't be here personally
14 today.  And then, the final thing I would ask the Court is,
15 in terms of travel restrictions -- and I indicated this to
16 Ms. Storm -- my client, in terms of his ongoing consulting
17 business, Danbury, he has a regular client in Phoenix and he
18 goes to Phoenix on average once a week.  So, we would ask
19 that he be released and that his travel restriction be the
20 Central District of California and Phoenix and then just
21 back and forth in between.
22         THE COURT:  I'll let you respond.
23         MR. STOLPER:  Thank you, your Honor.  Going
24 through Mr. Biener's points just briefly, with respect to
25 the legitimate money that was being circulated offshore,

10

1   it's the Government's --
2           THE COURT: Let me ask you this. Has this
3   investigation been going on for four years?
4           MR. STOLPER: The investigation has been going on
5   for four years. Mr. Biener and I have spoken about this
6   investigation and I did inform Mr. Biener that I thought the
7   consequences -- the exposure for his client was quite
8   severe. That is a different matter than the Defendant
9   actually having been charged. There are many times the
10  Government goes to Defense lawyers and have informal
11  conversations, but nothing ever resolved. Mr. Biener and I
12  have several of those cases ongoing right now. Whether or
13  not those people ultimately will be flight risks or not,
14  it's impossible to say. As I'm sure Mr. Biener advises all
15  of his clients, sometimes, the Government charges and
16  sometimes they don't.
17          With respect to the legitimate money that
18  Mr. Biener was referring going offshore, it's the
19  Government's experience that it's a very unusual thing to do
20  with your legitimate money, to wire it to Nevis and then to
21  Luxembourg, and then to bank accounts you set up in Nevada.
22  If one thinks the money is coming to you legitimately,
23  generally one just gets a paycheck. Mr. Biener is correct
24  that the amount of money we know the Defendant has sent
25  offshore is relatively small, less than a million dollars.

1 But, what's troubling to the Government is, we know there's
2 a lot of money missing.
3         THE COURT:  Offshore has these connotations.
4 They're not necessarily always illegal, are they?
5         MR. STOLPER:  Sending money offshore is not
6 always --
7         THE COURT:  People invest --
8         MR. STOLPER:  It's a global economy, your Honor.
9         THE COURT:  Thank you.  That was the word I was
10 looking for.
11         MR. STOLPER:  Your Honor, I agree that many people
12 are legitimate investors overseas.  Mr. Ketner is not one of
13 them.  Mr. Ketner was circulating money offshore so he could
14 presumably hide it from the IRS, evidence which I think is
15 manifest in the fact that he doesn't file tax returns.  Your
16 Honor, there's a lot of money missing.  Mr. Biener would
17 like this Court to believe that the money simply got eaten
18 up by the company.  Maybe that's true.  At this point in
19 time, we simply don't know.  We just know the money's not
20 there.
21         THE COURT:  Well, it's your burden to show me he's
22 a risk of flight.  This is not a presumption case.
23         MR. STOLPER:  That's correct, your Honor.
24         THE COURT:  IT's your burden to show me that there
25 are no conditions or combination of conditions that will

12

1 insure his appearance in court.
2          MR. STOLPER: I agree, your Honor. So, we have
3 millions in missing money and we have offshore accounts. I
4 think that combination by itself is sufficient to detain
5 this Defendant.
6          THE COURT: Okay. Anything else?
7          MR. BIENERT: No, your Honor.
8          THE COURT: I'm going to set a bond in this case.
9 I don't believe the Government has met its burden to
10 demonstrate that this Defendant poses a risk of flight,
11 accepting the Government's -- to accept all the allegations.
12 It's true the Government has made allegations. Mr. Stolper
13 in good faith believes that there's nine million dollars
14 missing and I'll accept that. Whether it was stolen or
15 poorly invested, I really don't know at this point in time.
16 The Defendant has no criminal record. He has long-standing
17 ties with the community. He's been aware of the
18 investigation for many years. He has not fled. He's
19 retained counsel. It appears he's more than willing to
20 contest the charges.
21          So, based on that, I'm going to set bond as
22 follows. I'm going to set a $50,000 appearance bond and an
23 affidavit of surety signed by a responsible party. You'll
24 be in touch with pretrial supervision in the case. You're
25 to surrender all passports. The clerk -- the report says

```
                                                                  13
 1  you don't have a passport, is that right?
 2          THE DEFENDANT:  Your Honor, if I have a passport,
 3  it is expired three or four years ago, because with the
 4  criminal investigation going on, I just chose not to renew
 5  it.
 6          THE COURT:  All right, I want you to sign a
 7  declaration stating that, and you're not to apply for
 8  issuance of a passport while on release in the case.  Travel
 9  will be restricted to the Central District of California.
10  Now, let's talk about this Phoenix issue.  You do it on a
11  one-day turnaround?
12          THE DEFENDANT:  What I do is I usually go over on
13  the 4:00 or 5:00 flight in the evening and get a hotel close
14  by to there, and then I work and I come home the following
15  late afternoon, early evening.
16          THE COURT:  All right, then, you're to provide a
17  schedule to pretrial services of where you're going and
18  where you're staying, when you're going to be back on a
19  weekly basis.
20          THE DEFENDANT:  I would be happy to do that.
21          THE COURT:  So, travel to and from Phoenix for
22  business purposes, only Phoenix, nowhere else, without Court
23  approval.  To reside at the address approved by pretrial
24  services and not relocate without prior permission from
25  pretrial services.  Any --
```

```
                                                                    14
 1            MR. STOLPER:  Yes, your Honor.  The Defendant used
 2   a fake ID to open up the accounts.
 3            THE COURT:  All right, you're not to use or
 4   possess any identification other than your own legal name or
 5   true name, and in order -- to agree to submit to a search of
 6   your person and/or property by pretrial services in
 7   conjunction with the United States Marshal.  Any other
 8   conditions you believe are necessary and appropriate?
 9            MR. STOLPER:  The Government would request some
10   type of electronic monitoring.  This Defendant seems to be
11   quite affluent.  GPS monitoring might be appropriate.
12            THE COURT:  Well, if affluence is the basis for
13   putting a GPS monitor on --
14            MR. STOLPER:  In terms of being able to pay for
15   it, your Honor, sorry.
16            THE COURT:  Oh, okay, all right.
17            MR. BIENERT:  There's no reason for it, your
18   Honor.  It's an encumbrance not only to him, but to pretrial
19   services.  There's no indicator that it's necessary.
20            THE COURT:  I'm not going to monitor him based
21   on -- if there's other information you can gather that might
22   raise some concerns, I'd be glad to listen to it.
23            MR. STOLPER:  Thank you, your Honor.
24            THE COURT:  The burden hasn't been met in this
25   case.  All right, anything else?
```

```
                                                                    15

 1              UNIDENTIFIED SPEAKER:  Is your Honor going to
 2   impose an employment condition?
 3              THE COURT:  No, because he's employed and I think
 4   that just raises a can of worms that I don't want to --
 5              UNIDENTIFIED SPEAKER:  Thank you.
 6              THE COURT:  All right.  Post-indictment
 7   arraignment will be Tuesday, February 22nd, 2005, 10:00 a.m.
 8   That's when you'll be back in court in front of Judge --
 9              THE DEFENDANT:  Yes, your Honor.
10              MR. BIENERT:  Thank you, your Honor.
11              MR. STOLPER:  Thank you, your Honor.
12         (Proceedings concluded.)
13
14              I certify that the foregoing is a correct
15   transcript from the electronic sound recording of the
16   proceedings in the above-entitled matter.
17
18   _Holly Martens_____     _3/10/06_____
     Transcriber                  Date
19
20
21
22
23
24
25
```