DEBRA WONG YANG
United States Attorney
WAYNE R. GROSS
Assistant United States Attorney
Chief, Santa Ana Branch
KENNETH B. JULIAN (Cal. State Bar # 149840)
Assistant United States Attorney
Deputy Chief, Santa Ana Branch
BRENT G. TABACCHI (Cal. Bar No. Pending)
Assistant United States Attorney
    Ronald Reagan Federal Building and Courthouse
    411 West Fourth Street, Suite 8000
    Santa Ana, California 92701
    Telephone: (714) 338-3540
    Facsimile: (714) 338-3708
    Brent.Tabacchi@usdoj.gov

Attorney for Plaintiff
United States of America

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. SA CR 05-36-JVS |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT KENNETH KETNER |
| v. | |
| KENNETH KETNER, | |
| Defendant. | |

    1.  This constitutes the plea agreement between defendant KENNETH KETNER ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities.

//
//



## PLEA

2.  Defendant agrees to plead guilty to counts nine and sixteen of the indictment in <u>United States v. Kenneth Ketner</u>, Case No. SA CR 05-36-JVS.

## NATURE OF THE OFFENSES

3.  In order for defendant to be guilty of count nine, which charges a violation of Title 18, United States Code, Section 1343, the following must be true: (1) the defendant knowingly devised or knowingly participated in a scheme to defraud; (2) the statements made or facts omitted as part of the scheme were material; (3) the defendant acted with the intent to defraud; and (4) the defendant used, or caused someone to use, wire communications in commerce to carry out or to attempt to carry out the scheme or plan.

In order for defendant to be guilty of count sixteen, which charges a violation of Title 18, United States Code, Section 1957, the following must be true: (1) the defendant knowingly engaged or attempted to engage in a monetary transaction; (2) the defendant knew the transaction involved criminally derived property; (3) the property had a value of greater than $10,000; (4) that the property was, in fact, derived from wire fraud; and (5) the transaction occurred in the United States.

Defendant admits that defendant is, in fact, guilty of these offenses as described in counts nine and sixteen of the indictment.

## PENALTIES AND RESTITUTION

4.  The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1343

that occurred prior to July 30, 2002 is: 5-years imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1957 is: 10-years imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

Therefore, the total maximum sentence for all offenses to which defendant is pleading guilty is: 15-years imprisonment; a 3-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $200.

5.   Defendant understands that defendant will be required to pay full restitution to the victims of the offenses. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the amount of restitution is not restricted to the amounts alleged in the counts to which defendant is pleading guilty and may include losses arising from charges not prosecuted pursuant to this agreement as well as all relevant conduct in connection with those charges. Defendant further agrees that defendant will not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

6. Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

7. Defendant also understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.

8. Defendant further understands that the conviction in this case may subject defendant to various collateral consequences, including but not limited to, deportation, revocation of probation, parole, or supervised release in another case, and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

## FACTUAL BASIS

9. Defendant and the USAO agree and stipulate to the statement of facts provided below. This statement of facts includes facts sufficient to support a plea of guilty to the charge described in this agreement and to establish the sentencing guideline factors set forth in paragraph 12 below. It is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to defendant

that relate to that conduct. The stipulated facts are as follows:

At all times relevant to this plea agreement, Kenneth Ketner was one of the operators of Mortgage Capital Resources ("MCR"), a mortgage brokerage firm located in Orange County, California, and elsewhere. Drawing on lines of credit from commercial lenders--most notably, Household Commercial Financial Services ("Household")--MCR purported to fund home loans for borrowers throughout the country.

As part of its business, MCR requested on hundreds of occasions that Household wire money from the line of credit to fund specific mortgages. In these requests, MCR identified the specific borrower to whom these funds would be disbursed. Relying upon these representations, Household agreed to fund the specified loans and wired money for that purpose to a closing agent, attorney Allen Johnson. Household expected that MCR and Johnson would not use this money for any purpose other than to fund the loans of the identified borrowers.

Rather than complying with their promises and representations to Household, Ketner, with the knowing assistance of other MCR officers and employees, diverted for improper and fraudulent uses the money earmarked for the borrowers. In this way and to facilitate this scheme, Ketner improperly directed Johnson to transfer Household's money from his attorney-client trust account to an MCR-controlled account at La Salle Bank. Acting on such directions, Johnson diverted millions of dollars belonging to Household to MCR's accounts. With the knowing assistance of other MCR officers and employees, Ketner then used

this money to operate MCR and to pay his own personal expenses, such as payments on his house, boat, and credit cards.

Having improperly diverted this money to his own benefit and for his own purposes, Ketner and MCR could not fund many of the mortgages for which Household had wired money. To conceal this fact, Ketner instructed his employees to fund their way out of this problem. More precisely, he caused MCR to find new loans that Household would agree to fund; Ketner then caused the money earmarked for these new loans to pay off the original borrowers whose funds had been misappropriated.

To further this scheme, on or about May 22, 2000, Ketner caused Household to wire approximately $346,500 from its accounts in Illinois to Johnson's client trust account at Sanwa Bank in California. In causing this wire transfer, Ketner did not intend to use the money as promised--namely, to fund the loan of borrowers identified in the wire transfer requests. Rather, Ketner intended to divert these proceeds to fund the loans of borrowers whose money MCR already had misappropriated. As a result of this scheme, including his misappropriation and diversion of funds, Ketner caused Household and other lenders to suffer approximately $9.2 million in losses.

Ketner also laundered a portion of the money that MCR received as a result of this scheme. Having fraudulently caused Household to wire money to Johnson's client trust account, Ketner then caused Johnson to transfer the proceeds from this fraud to MCR's account at La Salle Bank. From this location, Ketner caused the proceeds from the fraud to be further disbursed to other bank accounts in the United States. For instance, on or

about May 22, 2000, Ketner caused to be wired from Johnson's bank account at Sanwa Bank to one of MCR's accounts at La Salle Bank $335,000 that Ketner knew was derived from his wire fraud scheme.

## WAIVER OF CONSTITUTIONAL RIGHTS

10. By pleading guilty, defendant gives up the following rights:

   a) The right to persist in a plea of not guilty.

   b) The right to a speedy and public trial by jury.

   c) The right to the assistance of legal counsel at trial, including the right to have the Court appoint counsel for defendant for the purpose of representation at trial. (In this regard, defendant understands that, despite his or her plea of guilty, he or she retains the right to be represented by counsel - and, if necessary, to have the court appoint counsel if defendant cannot afford counsel - at every other stage of the proceedings.)

   d) The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

   e) The right to confront and cross-examine witnesses against defendant.

   f) The right, if defendant wished, to testify on defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

   g) The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

By pleading guilty, defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## SENTENCING FACTORS

11. Defendant understands that the Court is required to consider the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") among other factors in determining defendant's sentence. Defendant understands, however, that the Sentencing Guidelines are only advisory, and that after considering the Sentencing Guidelines, the Court may be free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crimes of conviction.

12. Defendant and the USAO agree and stipulate to the following applicable Sentencing Guideline factors[1]:

Wire Fraud

| | | |
|---|---|---|
| Base Offense Level : | 6 | [U.S.S.G. § 2F1.1(a)] |
| Specific Offense Characteristics | | |
| Loss in Excess of $5,000,000 (i.e., $9,200,000) : | +14 | [U.S.S.G. § 2F1.1(b)(1)(O)] |
| More Than Minimal Planning : | +2 | [U.S.S.G. § 2F1.1(b)(2)(A)] |
| Supervisor/ Leader : | +3 | [U.S.S.G. § 3B1.1(b)] |
| Subtotal for Offense : | <u>25</u> | |

---

[1] The parties stipulate and agree that the United States Sentencing Guidelines effective November 1, 1998, i.e., the 1998 Guidelines, govern this case.

<u>Money Laundering</u>

| | | | |
|---|---|---|---|
| Base Offense Level | : | 20 | [U.S.S.G. § 2S1.1] |
| Specific Offense Characteristics | | | |
| Funds in Excess of $200,000 | : | +2 | [U.S.S.G. § 2F1.1(b)(1)] |
| Subtotal for Offense | : | <u>22</u> | |

<u>Grouping Calculations and Acceptance</u>

| | | | |
|---|---|---|---|
| Pre-grouping Subtotal | : | 25 | |
| Grouping Adjustment | : | +2 | [U.S.S.G. § 3D1.4(a)] |
| Acceptance of Responsibility | : | -3 | [U.S.S.G. § 3E1.1(a)] |
| Total Adjusted Offense Level | : | <u>24</u> | |

The USAO and defendant agree that no other specific offense characteristics, departures, or adjustments apply.

13. There is no agreement as to defendant's criminal history or criminal history category.

14. The stipulations in this agreement do not bind either the United States Probation Office or the Court. Both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court; (b) correct any and all factual misstatements relating to the calculation of the sentence; and (c) argue on appeal and collateral review that the Court's sentencing calculations are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.

//

DEFENDANT'S OBLIGATIONS

15. Defendant agrees that he or she will:

a) Plead guilty as set forth in this agreement.

b) Not knowingly and willfully fail to abide by all sentencing stipulations contained in this agreement.

c) Not knowingly and willfully fail to: (I) appear as ordered for all court appearances, (ii) surrender as ordered for service of sentence, (iii) obey all conditions of any bond, and (iv) obey any other ongoing court order in this matter.

d) Not commit any crime; however, offenses which would be excluded for sentencing purposes under U.S.S.G. § 4A1.2© are not within the scope of this agreement.

e) Not knowingly and willfully fail to be truthful at all times with Pretrial Services, the U.S. Probation Office, and the Court.

f) Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay;

g) To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the United States Attorney's Office;

h) Within six months of entering a guilty plea pursuant to this agreement, to file with the Internal Revenue Service ("IRS") Federal income tax returns for tax years 2001 through 2005, to pay any amounts due and owing (including penalties), and to comply with all rules and regulations of the IRS.

//
//
//

## THE USAO'S OBLIGATIONS

16. If defendant complies fully with all defendant's obligations under this agreement, the USAO agrees:

    a) To abide by all sentencing stipulations contained in this agreement.

    b) At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, to recommend a two-level reduction in the applicable sentencing guideline offense level, pursuant to U.S.S.G. § 3E1.1, and to recommend and, if necessary, move for an additional one-level reduction if available under that section.

    c) At the time of sentencing to move to dismiss the remaining counts of the indictment as against defendant. Defendant agrees, however, that at the time of sentencing the Court may consider the dismissed counts in determining the applicable Sentencing Guidelines range, where the sentence should fall within that range, the propriety and extent of any departure from that range, and the determination of the sentence to be imposed after consideration of the sentencing guidelines and all other relevant factors.

## BREACH OF AGREEMENT

17. If defendant, at any time between the execution of this agreement and defendant's sentencing on a non-custodial sentence or surrender for service on a custodial sentence, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. If the USAO declares this agreement breached, and the

Court finds such a breach to have occurred, defendant will not be able to withdraw defendant's guilty plea, and the USAO will be relieved of all of its obligations under this agreement.

18. Following a knowing and willful breach of this agreement by defendant, should the USAO elect to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

    a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the commencement of any such prosecution or action.

    b) Defendant gives up all defenses based on the statute of limitations, any claim of preindictment delay, or any speedy trial claim with respect to any such prosecution, except to the extent that such defenses existed as of the date of defendant's signing of this agreement.

    c) Defendant agrees that: I) any statements made by defendant, under oath, at the guilty plea hearing; ii) the stipulated factual basis statement in this agreement; and iii) any evidence derived from such statements, are admissible against defendant in any future prosecution of defendant, and defendant shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from any statements should be suppressed or are inadmissible.

//
//

LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK

19. Defendant gives up the right to appeal the Court's determination of the applicable Sentencing Guidelines range, including the method by which the Court calculated that range, with the following exceptions: the defendant can appeal (a) any upward departure in offense level or criminal history category; (b) any determination that the total offense level is above 24; and (c) the court's determination of defendant's criminal history category. Defendant retains the ability to appeal his sentence on all other grounds, including in particular the reasonableness of the sentence imposed by the court, with the exception that defendant gives up the right to appeal the following conditions of probation and/or supervised release that may be imposed by the court: standard conditions set forth in district court General Orders 318 and 01-05; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

20. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or a retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.

21. The USAO gives up its right to appeal the Court's Sentencing Guidelines calculations, provided that (a) the Court does not depart downward in offense level or criminal history category and (b) the Court determines that the total offense

level is 24 or above and imposes a sentence within the range corresponding to the determined total offense level and criminal history category.

### COURT NOT A PARTY

22. The Court is not a party to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' stipulations. Even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from any stipulation, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. No one - not the prosecutor, defendant's attorney, or the Court - can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

### NO ADDITIONAL AGREEMENTS

23. Except as set forth herein, there are no promises, understandings or agreements between the USAO and defendant or defendant's counsel. Nor may any additional agreement, understanding or condition be entered into unless in a writing signed by all parties or on the record in court.

//
//
//
//
//
//

**PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING**

24. The parties agree and stipulate that this Agreement will be considered part of the record of defendant's guilty plea hearing as if the entire Agreement had been read into the record of the proceeding.

This agreement is effective upon signature by defendant and an Assistant United States Attorney.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

DEBRA WONG YANG
United States Attorney

_____  7/17/06
BRENT G. TABACCHI                 Date
Assistant United States Attorney

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the Sentencing Guideline provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

_____  7/15/06
KENNETH KETNER                    Date
Defendant

I am KENNETH KETNER's attorney. I have carefully discussed every part of this agreement with my client. Further, I have

15

```
 1  fully advised my client of his/her rights, of possible defenses,
 2  of the Sentencing Guidelines' provisions, and of the consequences
 3  of entering into this agreement.  To my knowledge, my client's
 4  decision to enter into this agreement is an informed and
 5  voluntary one.
 6
 7  _____        7/17/06
    TERRY BIRD, ESQ.                      Date
 8  Benjamin Gluck
    Counsel for Defendant
 9  KENNETH KETNER
10
```

16

CERTIFICATE OF SERVICE BY MAIL

I, **Linda Lewis**, declare:

That I am a citizen of the United States and resident or employed in Orange County, California; that my business address is Office of United States Attorney, 411 West Fourth Street, Eighth Floor, Santa Ana, California 92701-4599; that I am over the age of eighteen years, and am not a party to the above-entitled action; that I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction the service by mail described in this Certificate was made; that on **July 19, 2006**, I deposited in the United States mail, Santa Ana, California in the above-entitled action, in an envelope bearing the requisite postage, a copy of: **PLEA AGREEMENT FOR DEFENDANT KENNETH KETNER**

addressed to:   Benjamin Gluck
              Bird Marella
              1875 Century Park East
              23rd Floor
              Los Angeles, CA 90067

at his/her last known address, at which place there is delivery service by United States mail.

This Certificate is executed on **July 19, 2006** at Santa Ana, California.

I certify under penalty of perjury that the foregoing is true and correct.

*Linda Lewis*
Linda Lewis