1   Terry W. Bird - State Bar No. 49038
        twb@birdmarella.com
2   Jason D. Kogan - State Bar No. 107707
        jdk@birdmarella.com
3   John M. McCoy III - State Bar No. 166244
        jmm@birdmarella.com
4   BIRD, MARELLA, BOXER, WOLPERT,
        NESSIM, DROOKS & LINCENBERG, P.C.
5   1875 Century Park East, 23rd Floor
    Los Angeles, California  90067-2561
6   Telephone: (310) 201-2100
    Facsimile: (310) 201-2110
7
    Attorneys for Defendant Kenneth Ketner
8

9               **UNITED STATES DISTRICT COURT**

10   **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

11

12   UNITED STATES OF AMERICA,          CASE NO. SA CR-05-36JVS

13              Plaintiff,              **OBJECTIONS TO USE OF
                                        UNCORROBORATED HEARSAY
14        vs.                           AND UNRELIABLE
                                        ALLEGATIONS IN CONNECTION
15   KENNETH KETNER,                    WITH SENTENCING**

16              Defendant.              Date:   July 2, 2007

17   _____   Trial Date:        May 30, 2006

18

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

238122.1                                                SA CR-05-36JVS
NOTICE OF MOTION AND MOTION TO STRIKE UNCORROBORATED HEARSAY ALLEGATIONS AND
                    FOR EVIDENTIARY HEARING THEREON

# MEMORANDUM OF POINTS AND AUTHORITIES

## I

## INTRODUCTION

The Constitution requires that a defendant's sentence be based on accurate reliable information. Mr. Ketner has committed a crime and is prepared to be sentenced by this Court. But he has a right to have the Court impose a sentence that is based on demonstrable fact rather than conjecture or fiction. Unfortunately, most of the "facts" upon which the PSR and the Government's Sentencing Memorandum – to the extent those facts depart from the settled record of the Plea Agreement – are simply wrong. The Government and the Probation Officer rely almost entirely on uncorroborated hearsay statements from co-conspirators or other self-interested witnesses. The statements of these witnesses – presently uncritically as factual bases for enhancing Mr. Ketner's sentence – are inherently unreliable, and on many instances, demonstrably inaccurate. The Government has clearly not attempted to corroborate the assertions, because if it had, it would have learned the truth and would not have presented these positions. Given that these witnesses have not testified under oath and have not been subjected to cross-examination, their self-serving statements are inherently unreliable.

## II

## DISCUSSION

**A.      Reliable Upon Inherently Unreliable Hearsay Statements To Establish A Sentencing Enhancement Is A Violation Of Due Process.**

"[A] defendant clearly has a due process right not to be sentenced on the basis of materially incorrect information." *United States v. Petty*, 982 F.2d 1365, 1969 (9th Cir. 1993), amended on denial of reh'g, 992 F.3d 1015 (9th Cir. 1993). When a sentencing factor has a disproportionate impact on the sentence, due process requires that the Government prove the facts underlying the sentence by clear and convincing evidence. *United States v. Jordan*, 256 F.3d 922, 930 (9th Cir. 2001).

NOTICE OF MOTION AND MOTION TO STRIKE UNCORROBORATED HEARSAY ALLEGATIONS AND
FOR EVIDENTIARY HEARING THEREON

1   In *United States v. Huckins*, 53 F.3d 276 (9th Cir. 1995) the Ninth Circuit held that

2   reliance upon uncorroborated hearsay or other unreliable grounds to enhance a

3   defendant's sentence violates a defendant's due process right to fair and reliable

4   sentencing and thus constitutes an abuse of discretion by the sentencing court. *Id.*

5   at 279-80.

6          When a probation report or the Government's sentencing memorandum relies

7   upon hearsay statements by alleged co-conspirators or accomplices or similarly

8   biased individuals whose statements are not subjected to cross-examination under

9   oath, those statements are inherently reliable and may not properly serve as the basis

10  for a sentencing enhancement absent independent corroboration by other, inherently

11  reliable evidence. *Huckins*, 53 F.3d at 279 (accomplice's statement not made under

12  oath and subject to cross-examination at trial is not "inherently reliable"); *Jordan*,

13  256 F.3d at 932-93 (PSR's reliance upon hearsay statements made to police officer

14  by accomplice fails to meet "inherently reliable" standard); *United States v. Corral*,

15  172 F.3d 714, 715-16 (1999) (PSR's reliance upon uncorroborated statements by co-

16  defendant renders it inherently unreliable).

17         Similarly, reliance upon factors not supported by clear and convincing

18  evidence –much less on conclusions flatly inconsistent with the available evidence –

19  constitutes a violation of due process. *Jordan, supra*; *Petty, supra.*

20  **B.     The PSR And The Government's Memorandum Rely Almost Exclusively**

21  **On Inherently Unreliable – And Often Demonstrably False – Hearsay**

22  **Statements In Recommending Sentencing Enhancements and**

23  **Characterizing The Offense Conduct.**

24         Virtually all of the sentencing enhancements recommended by the probation

25  officer in this case lack any basis in inherently reliable evidence.  In most instances,

26  the PSR does not even identify the purported evidentiary basis for its frequently

27  inaccurate factual assertions.  It is apparent, however, that the PSR in most instances

28  has simply repeated allegations from alleged accomplices or otherwise tainted

238122.1                                          3                                   SA CR-05-36JVS
NOTICE OF MOTION AND MOTION TO STRIKE UNCORROBORATED HEARSAY ALLEGATIONS AND
FOR EVIDENTIARY HEARING THEREON

1  witnesses incorporated in investigative reports prepared by the FBI.  None of these
2  statements are under oath, and none have been subjected to cross-examination by
3  defense counsel.  Because there is no inherently reliable foundation for the PSR's
4  (often grossly inaccurate) conclusions, these conclusions fail the Ninth Circuit's
5  well-established "inherent reliability" test and cannot properly be used as the basis
6  for sentencing enhancements.  *Huckins, supra; Corral, supra.*  In other instances,
7  the PSR simply misreads or misstates the established evidence, in violation of
8  established Constitutional requirements.  *See Petty, supra.*

9       Mr. Ketner recognizes that the Probation Office will not always be in a
10 position to conduct a full investigation, and that the Court must rely to a significant
11 extent on the Probation Office's analyses.  But in this case, the Government and the
12 Probation Office have maintained their unsupportable positions while simply
13 ignoring critical evidence that has been pointed out by Mr. Ketner's counsel.

14      It bears repeating that Mr. Ketner admits that he committed crimes and
15 deserves to be punished.  But it is appropriate for him to attempt to ensure that his
16 sentence is based on an accurate view of the facts.  The fact that Mr. Ketner has
17 admitted his crime should not permit other culpable individuals to falsely shift even
18 more blame to him.

19      To that end, Mr. Ketner has repeatedly directed the Government and the
20 Probation Officer to bankruptcy records and other clearly reliable evidence
21 contravening the assertions made in the PSR.  Mr. Ketner also submitted extensive
22 objections to the PSR and detailed forensic reports illustrating the true factual
23 circumstances of the criminal conduct at issue.  The Laffer Report, attached as
24 Exhibit A to Mr. Ketner's Sentencing Memorandum, details the many demonstrable
25 factual errors incorporated in the analyses of the PSR and the Government's
26 memorandum.  For the Government and the Probation Office to simply stand on
27 their mistaken positions without even addressing those materials is unreasonable.
28 / / /

1.  **The Characterization of Mr. Ketner's Pre-MCR Conduct Is Demonstrably Wrong But Probation Has Refused to Amend the PSR.**

The Government in its Sentencing Memorandum makes the prejudicial and unsupportable assertion that Mr. Ketner participated in fraudulent real estate activities before he began working at MCR. These assertions are based entirely on inherently unreliable, uncorroborated – and demonstrably inaccurate – hearsay allegations. As such, their use is improper and any reliance upon such allegations would constitute a violation of Mr. Ketner's due process rights.

First, the Government cites the hearsay statements of "Tami Ruffoll", who called the prosecutor after hearing about Ketner's indictment on the radio. (See Government's Sentencing Memorandum at 3.) Ruffoll reportedly claimed that Ketner worked with her at GMAC Mortgage in "1981 or 1982", and that during that period borrower information was misstated to increase the likelihood of loan qualification. She further claims that she reported Mr. Ketner's purported misconduct to GMAC's senior management, leading to Mr. Ketner's termination from GMAC "three weeks later", and that Mr. Ketner threatened her as a result. *Id.*

In fact, Mr. Ketner did not work out GMAC during the period the person identifying herself as "Tami Ruffoll" claimed. Mr. Ketner only worked at GMAC years later, from 1984-87. *See* Exh. A hereto. Mr. Ketner's ultimate departure from the company had nothing to do with purported fraudulent activity. Indeed, litigation arising from the termination of Mr. Ketner's employment resulted in a settlement in excess of $100,000 payable to Mr. Ketner.

Second, the Government relies upon the demonstrably false hearsay statements of Roberta Martin to falsely suggest that Ketner installed Martin as the "figurehead President" of an entity known as California Mortgage Corporation ("CFC") "in the mid 1990s", and then immediately caused CFC to file for bankruptcy so that he could form MCR. The Government also blithely adopts

NOTICE OF MOTION AND MOTION TO STRIKE UNCORROBORATED HEARSAY ALLEGATIONS AND FOR EVIDENTIARY HEARING THEREON

1   Martin's uncorroborated claims that "[a]fter the bankruptcy, . . . HUD conducted an
2   audit and discovered that many of CFC's HUD insured loans were fraudulent, and
3   that Martin has held personally responsible to HUD for $200,000 worth of losses as
4   a result. *See* Government's Sentencing Memorandum at 4.

5          Martin's uncorroborated hearsay statements, blindly accepted and relied upon
6   by the Government, are in fact demonstrably false.  CFC did not file for bankruptcy
7   so that Ketner could form MCR.  In fact, MCR was formed on or about July 6,
8   1995.  CFC filed for bankruptcy approximately *four years later*, in April 1999.
9   Exh. B.  Nor did the HUD audit occur after the bankruptcy filing.  The HUD audit
10  was *completed* in early 1997, approximately two years *before* CFC's bankruptcy.
11  That audit resulted in a settlement statement containing no admissions or findings of
12  fraud and with all repayment obligations explicitly borne *by Ketner, not Martin*.[1]
13  *See* Exh. C.

14         In short, the self-exculpating story told by Martin and parroted by the
15  Government is riddled with demonstrable inaccuracies.  That Martin would lie and
16  try to minimize her role at Ketner's expense is not surprising, given the substantial
17  evidence that Martin properly bears significant culpability.  In addition to Martin's
18  serving as President of CFC for the four years leading up to its bankruptcy,
19  documentary evidence – apparently ignored by the Government – shows that Martin
20  was personally involved in substitutions of trust deeds and full reconveyances and in
21  the provision of NSF checks to borrowers while at MCR.  *See* Exh. D.  Moreover,

22  _____

23  [1]   Martin claims that she followed Ketner to MCR only to ensure that the HUD
24  settlement would be paid, and that she left MCR as soon as that obligation was
      satisfied.  This story makes no sense, of course, given that Martin's claim that she
25  was deemed personally responsible for the HUD settlement is demonstrably false.
26  But in any event, the final payment on the HUD obligation was made in April 2000,
      but Martin did not resign from MCR until some six months later, on
27  October 13, 2000.  Exh. E.

28

1 | the documents ignored by the Government include several checks written by Martin
2 | to herself and Ron Martin against Ketner's personal checking account. Witnesses
3 | have testified under oath that Martin would sign Ketner's name without permission.
4 | Martin also caused additional payments to be made to herself from corporate
5 | accounts, and never caused a Form 1099 to be issued for those payments. Exh. F.

6 |      In other words, Martin's statements are paradigmatic self-absolving
7 | statements by a co-conspirator. Critically, the PSR relies on Martin not only to
8 | mischaracterize Ketner's pre- and post-MCR conduct, but as the basis for the PSR's
9 | recommendation of a four-level "leadership" enhancement. Given the inherently
10 | unreliability – indeed, the demonstrable falsity – of these hearsay statements, they
11 | cannot properly be considered as a basis for enhancing Ketner's sentence.

12 | **2.    The Recommendation of a Four-Level "Leadership" Enhancement**
13 | **       Is Based on Unreliable Hearsay**

14 |      The government and the Probation office rely heavily on self-exculpating
15 | statements from Robert Luby, who was MCR's CEO throughout the relevant time
16 | period. In the interviews and statements Luby provided to the government – none of
17 | which, of course, were subjected to cross-examination – he repeatedly distorted the
18 | facts to deflect blame and attention away from himself and onto Ketner. To give a
19 | single, telling example: Luby apparently told the FBI on March 27, 2001 that the
20 | sale of Ketner's interest in stock of MCR to an entity know as PL Miller, LLC
21 | (named after Luby's wife, Pam Miller) never occurred, and that PL Miller never had
22 | a back account or participated in any financial transactions. (March 27, 2001 FBI
23 | Report.)

24 |      This assertion is flatly contradicted by Luby's own sworn statements given in
25 | other contexts (*i.e.*, when it served his interest to tell a different story). In an August
26 | 13, 2001 declaration given by Luby to counsel for Household, Luby stated under
27 | oath that the Common Stock Purchase Agreement was executed, that the transaction
28 | occurred, and that payments were received by PL Miller in connection therewith.

NOTICE OF MOTION AND MOTION TO STRIKE UNCORROBORATED HEARSAY ALLEGATIONS AND
FOR EVIDENTIARY HEARING THEREON

1 | Additional misstatements and contradictions by Luby are detailed in the Laffer
2 | Report at pages 22-25.

3 |      The government and Probation Officer appear to rely heavily on hearsay
4 | statement made by co-defendant Allen Johnson in his interviews with the FBI.  As a
5 | defendant, Johnson's incentive to minimize his own culpability by exaggerating Mr.
6 | Ketner's role in the offense conduct is obvious.  Although the government suggests
7 | that Johnson had recently been admitted to the bar at the time of the offense conduct
8 | and thus was unsophisticated, Johnson was in fact an experienced real estate
9 | investigator who played a major role – often without Ketner's knowledge or
10 | approval – in the underlying events.  See Laffer Report at page 13, fn. 9.

11 |      For example, in an effort to minimize his own role and shift responsibility to
12 | Mr. Ketner, Johnson claimed that he never provided legal advice or representation to
13 | MCR or Mr. Ketner and "never opened a client file on Ketner."  In fact,
14 | contemporaneous documents prove that Johnson represented on multiple occasions
15 | that he was legal counsel to both MCR and Ketner, and provided legal advice to
16 | both.  Moreover, even a cursory review of the available documents reveal that
17 | Johnson was providing legal approval for MCR transactions – and generating
18 | substantial invoices for legal services rendered.

19 |      The PSR also relies heavily on self-serving hearsay statements by individuals
20 | such as Sal Benicosa – individuals who clearly sought to minimize their own
21 | responsibility at Mr. Ketner's expense.  As extensively demonstrated in the Laffer
22 | Report, Benicosa was in fact a central figure in MCR's collapse.  *See* Laffer Report
23 | at pp. 16-22.  The Government and the PSR similarly rely on self-serving hearsay
24 | statements from Kevin Bonds, who was the President and Chief Executive Offices
25 | at Home ZipR.  Contemporaneous documents clearly demonstrate Bonds' active
26 | role in managing the operations of MCR's Atlanta office – in direct contradiction of
27 | Bonds' claim that he had little direct involvement in the company's operations.
28 | Exh. G.

NOTICE OF MOTION AND MOTION TO STRIKE UNCORROBORATED HEARSAY ALLEGATIONS AND
FOR EVIDENTIARY HEARING THEREON

3. **The Government And PSR Rely on Inherently Unreliable Hearsay In Proposing a Grossly Inflated Loss Amount**

In order to hypothesize a loss amount of over twelve million dollars, the PSR relies upon transactions that have nothing to do with the offense conduct and do not represent criminal losses by any party. As discussed in Mr. Ketner's Sentencing Memorandum and the Laffer Report, the PSR's analysis lacks a valid basis in fact, and in fact, is grossly inflated. Reliance upon such inherently unreliable – and demonstrably false – supposition in connection with sentencing is clearly improper. *Huckins, supra.*

## III

## CONCLUSION

For all of the foregoing reasons, the Court should strike all factual assertions in the PSR and the Government's Memorandum based on hearsay statements from the record, or in the alternative schedule an evidentiary hearing at which the government must establish through live testimony those facts beyond the Plea Agreement upon which it contends the Court should rely for sentencing purposes.

DATED: June 22, 2007                     Terry W. Bird
                                         Jason D. Kogan
                                         John M. McCoy III
                                         BIRD, MARELLA, BOXER, WOLPERT,
                                             NESSIM, DROOKS & LINCENBERG, P.C.


                                         By: s/John M. McCoy III
                                             Attorneys for Defendant Kenneth Ketner
                                             E-mail: jmm@birdmarella.com

NOTICE OF MOTION AND MOTION TO STRIKE UNCORROBORATED HEARSAY ALLEGATIONS AND
FOR EVIDENTIARY HEARING THEREON