ORIGINAL

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

UNITED STATES OF AMERICA,
                    Plaintiff,
     vs.
                                    SACR-05-36-JVS
KENNETH KETNER,
                    Defendant.

------------------------------

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

August 1, 2006

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

FILED
CLERK, U.S. DISTRICT COURT

OCT - 2 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

DOCKETED ON CM

OCT - 3 2007

BY                          040

*SHARON SEFFENS, U.S. COURT REPORTER*

2

```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiff:

 3   DEBRA W. YANG
     United States Attorney
 4   WAYNE R. GROSS
     Assistant United States Attorney
 5   Chief, Santa Ana Division
     BRENT G. TABACCHI
 6   Assistant United States Attorney
     U.S. District Courthouse
 7   411 West Fourth Street, 8th Floor
     Santa Ana, CA  92701
 8

 9   For the Defendant:

10   TERRY W. BIRD
     BIRD, MARELLA, BOXER, WOLPERT
11     NESSIM, DROOKS & LINCENBERG, P.C.
     1875 Century Park East, 23rd Floor
12   Los Angeles, CA  90067-2561

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1   SANTA ANA, CALIFORNIA; AUGUST 1, 2006; P.M. SESSION

2            THE CLERK:   Item No. 2, SACR-05-36-JVS,

3   United States of America versus Kenneth Ketner.

4            Counsel, please state your appearances.

5            MR. TABACCHI:  Good afternoon, Your Honor.  Brent

6   Tabacchi on behalf of the United States.

7            MR. BIRD:  Good afternoon, Your Honor.  Terry Bird

8   representing the defendant who is present in the courtroom.

9            THE COURT:  Good afternoon.

10           I understand there will be a change of plea today.

11           MR. BIRD:  That's correct.

12           THE COURT:  I note that a plea agreement was filed

13   on behalf of July 19, 2006.  I will direct that it be made a

14   part of these proceedings.

15           Mr. Ketner, would you and Mr. Bird go to the

16   podium, please.

17           Good afternoon, Mr. Ketner.

18           THE DEFENDANT:  Good afternoon, Your Honor.

19           THE COURT:  Sir, before I accept your plea of

20   guilty, I need to satisfy myself that you understand the

21   nature of the charges against you and the possible

22   punishment.  I also need to satisfy myself that you

23   understand the constitutional and statutory rights that you

24   will be giving up by pleading guilty.  For that reason, I am

25   going to ask you a number of questions.  If any of my

1  questions are unclear, please just let me know, and I will

2  be happy to clarify to question.

3          You have right to consultant with Mr. Bird at any

4  point during these proceedings, so if you would like to do

5  that, please just let me know.   Okay?

6          THE DEFENDANT:   I understand.

7          THE COURT:   At this time, the clerk is going to

8  put you under oath.

9          (Defendant sworn.)

10         THE COURT:   Sir, do you understand that you are

11  now under oath, and that if you answer any of my questions

12  falsely, you could be prosecuted later for perjury or the

13  making of a false statement?

14         THE DEFENDANT:   I do.

15         THE COURT:   State your true and correct name.

16         THE DEFENDANT:   Kenneth Christopher Ketner.

17         THE COURT:   How old are you, sir?

18         THE DEFENDANT:   57.

19         THE COURT:   Tell me about your educational

20  background, please.

21         THE DEFENDANT:   I attended elementary school, high

22  school.   I graduated from Alta Loma High School in 1966.   I

23  went to a community college.   I went to Chaffe Community

24  College located in Alta Loma, California.   I then pursued a

25  college degree at Cal Poly - Pomona.   I did not graduate

1   from there.

2        THE COURT:  Have you recently been treated for any

3   mental illness?

4        THE DEFENDANT:  I am in the process of -- for the

5   first time in my life, I have retained a therapist, but I am

6   not under any medication at this time nor have I in the past

7   been treated for any mental illness.

8        THE COURT:  A psychologist or for a psychiatrist?

9        THE DEFENDANT:  A psychologist.

10       THE COURT:  Do you feel that you are

11  psychologically able to proceed today with this pleading?

12       THE DEFENDANT:  Yes.

13       THE COURT:  Do you feel that you are under any

14  emotional stress at this time?

15       THE DEFENDANT:  No, Your Honor.

16       MR. BIRD:  Other than the normal stress that --

17       THE DEFENDANT:  Other than the normal stress.

18       THE COURT:  Right.  I appreciate that there is an

19  inherent stress in a criminal prosecution.

20       THE DEFENDANT:  Okay, that's what I am suffering

21  if I am suffering anything at all.

22       THE COURT:  Do you feel alert today?

23       THE DEFENDANT:  Yes.

24       THE COURT:  Do you feel that you understand the

25  environment where you are today and what is going on?

1 THE DEFENDANT:  Yes, I do.

2 THE COURT:  Have you recently been treated for

3 addiction to narcotics?

4 THE DEFENDANT:  No.

5 THE COURT:  Have you taken any medicine, drugs, or

6 alcohol within the past 72 hours?

7 THE DEFENDANT:  No.

8 THE COURT:  Do you suffer from any mental

9 condition that would prevent you from fully understanding

10 the charges against you or the consequences of any guilty

11 plea you may enter?

12 THE DEFENDANT:  No.

13 THE COURT:  Is there any reason at all why we

14 cannot go forward with your plea at this time?

15 THE DEFENDANT:  No.

16 THE COURT:  Mr. Bird, have you had an opportunity

17 to speak to your client immediately prior to this

18 proceeding?

19 MR. BIRD:  I have.

20 THE COURT:  Do you have any reason to believe that

21 the defendant is not competent to enter his plea of guilty

22 at this time?

23 MR. BIRD:  I do not.

24 THE COURT:  Is there any reason at all why we

25 cannot go forward?

1        MR. BIRD:  I know of none.

2        THE COURT:  Is it your opinion that your client is

3  in the full possession of his faculties?

4        MR. BIRD:  It is.

5        THE COURT:  The Court having observed the

6  defendant and having considered his responses and the

7  responses of counsel finds that the defendant is in the full

8  possession of his facilities.

9        Sir, you have a number of constitutional rights

10  that you will be giving up by pleading guilty.  I am going

11  to tell you about those at this time.

12        You have the right to a speedy and public trial.

13  You have the right to be tried by a jury.  Alternatively,

14  you have the right to waive a jury trial and to be tried by

15  the Court.  That means I would be the trier of fact.  In

16  either case, you have the right to persist in your plea of

17  not guilty, and you have the right to make the government

18  prove that you are in fact guilty beyond a reasonable doubt.

19        You have the right to be represented by an

20  attorney throughout these proceedings, and if you cannot

21  afford one, one will be appointed for you free of charge.

22  You have the right to confront and cross-examine all

23  witnesses called to testify against you.

24        You also have the right to present witnesses on

25  your own behalf, and you have the right to have those

1  witnesses subpoenaed, that is, compelled by Court order to

2  come here to testify for you.

3          You have a privilege against self-incrimination,

4  that is, the right to remain silent.  However, by entering a

5  plea of guilty, you are giving up that right because you are

6  in fact incriminating yourself.  You have the right to

7  testify on your own behalf, but you cannot be compelled to

8  do so or to incriminate yourself in any way.  If you do not

9  testify at trial, that fact cannot be used against you.

10         In the event of a conviction after trial, you have

11  the right to appeal the sentence and the conviction.

12         Have you discussed these rights with Mr. Bird?

13         THE DEFENDANT:  I have, Your Honor.

14         THE COURT:  Would you like any additional time now

15  to discuss these rights with him?

16         THE DEFENDANT:  No.

17         THE COURT:  Do you understand that you have these

18  rights, and that if you enter a plea of guilty and the plea

19  is accepted by the Court, you will be giving up the right to

20  a jury trial and all the other rights I have just described

21  to you?

22         THE DEFENDANT:  I understand that, Your Honor.

23         THE COURT:  Do you give up these rights?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Mr. Bird, are you satisfied that each

1    of these waivers is made knowingly and voluntarily?

2              MR. BIRD:  I am.

3              THE COURT:  Do you join and concur in each of the

4    waivers?

5              MR. BIRD:  I do.

6              THE COURT:  Mr. Ketner, in Count 9 of the

7    Indictment you are charged with violating United States Code

8    Section -- Title 18, Section 1343, mail fraud.  In Count 16,

9    you are charged with violating Title 18 of the United States

10   Code, Section 1957, money-launderi,n,g, each count being a

11   felony.

12             Mr. Tabacchi, would you recite the elements of

13   each charge, please.

14             MR. TABACCHI:  Yes, and just for the record,

15   Mr. Ketner will be pleading to a wire fraud charge as

16   opposed to a mail fraud charge.

17             THE COURT:  Okay.

18             MR. TABACCHI:  In order for Mr. Ketner to be

19   guilty of Count 9 which charges a violation of Title 18,

20   United States Code, Section 1343, the following four facts

21   must be true:  (1)  Mr. Ketner knowingly devised or

22   knowingly participated in a scheme to defraud; (2) the

23   statements made or facts omitted as part of the scheme were

24   material; (3) Mr. Ketner acted with the intent to defraud;

25   and (4) Mr. Ketner used, or caused someone to use, wire

1    communications in commerce to carry out or to attempt to

2    carry out the scheme or plan.

3            In order for Mr. Ketner to be guilty of Count 16,

4    which charges a violation of Title 18, United States Code,

5    Section 1957, the following must be true:  (1) Mr. Ketner

6    knowingly engaged or attempted to engage in a monetary

7    transaction; (2) Mr. Ketner knew the transaction involved

8    criminally derived property; (3) the property had a value of

9    greater than $10,000; (4) that the property was in fact

10   derived from wire fraud; and (5) the transaction occurred in

11   the United States.

12           THE COURT:  Thank you.

13           THE COURT:  Sir, do you understand the nature of

14   the charge?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Have you discussed with Mr. Bird each

17   charge and each of the elements of each charge?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Do you have any questions about the

20   charges against you?

21           THE DEFENDANT:  No.

22           THE COURT:  Have you been advised of the maximum

23   penalties that can be imposed for the charges to which you

24   are offering to plead guilty?

25           THE DEFENDANT:  I have.

1      THE COURT:  Mr. Tabacchi, would you recite the

2  maximums, please.

3      MR. TABACCHI:  Yes.

4      The statutory maximum sentence that the Court can

5  impose for a violation of Title 18, United States Code,

6  Section 1343, that occurred prior to July 30, 2002, as is

7  charged in this case is as follows: five years imprisonment;

8  a three-year period of supervised release; a fine of

9  $250,000 or twice the gross gain or gross loss resulting

10 from the offense, whichever is greatest; and a mandatory

11 special assessment of $100.

12     The statutory maximum sentence that the Court can

13 impose for a violation of Title 18, United States Code,

14 Section 1957, is as follows:  ten years imprisonment; a

15 three-year period of supervised release; a fine of $250,000

16 or twice the gross gain or gross loss resulting from the

17 offense, whichever is greatest; and a mandatory special

18 assessment of 100.

19     Therefore, the total maximum sentence for all

20 offenses to which Mr. Ketner is pleading guilty is as

21 follows:  15 years imprisonment; a three-year period of

22 supervised release; a fine of $500,000 or twice the gross

23 gain or gross loss resulting from the offense, whichever is

24 greatest; and a mandatory special assessment of $200.

25     THE COURT:  And I understand there will be

1    restitution required in this case.

2           MR. TABACCHI:  That's correct, Your Honor.  The

3    parties have no specific agreement as to the amount of

4    restitution.  It's the estimate of the United States that

5    restitution will be in excess of $9 million.

6           THE COURT:  Sir, do you understand that as part of

7    any criminal judgment in this case you will ordered to make

8    restitution for any losses you caused?

9           THE DEFENDANT:  Yes, I understand that.

10          THE COURT:  Although the government has a current

11   estimate in excess of $9 million, the order of restitution

12   will cover the actual amount as the Court determines it

13   regardless of what that amount is.

14          THE DEFENDANT:  I understand.

15          THE COURT:  Sir, do you have any questions about

16   the punishments that can be imposed for the charges to which

17   you are offering to plead guilty?

18          THE DEFENDANT:  No.

19          THE COURT:  Do you understand that there is no

20   parole and that if you are sentenced to prison you will not

21   be released on parole?

22          THE DEFENDANT:  I understand.

23          THE COURT:  You may be subject to supervised

24   release for a number of years after your release from

25   prison.

1      Do you understand that if you violate any of the

2  terms and conditions of your supervised release you could be

3  given more time in prison?

4      THE DEFENDANT:  I understand.

5      THE COURT:  If you are currently on probation,

6  parole, or supervised release for another offense, do you

7  understand that your plea in this case could result in a

8  violation of that probation, parole, or supervised release

9  and result in your serving more time than you otherwise

10  would?

11      THE DEFENDANT:  I understand, but I am not on any

12  of those things.

13      THE COURT:  Well, I don't have those facts.  I

14  just need to advise you of the consequences of the plea in

15  the event that those facts are applicable to you.

16      Have you discussed the possible punishment, the

17  facts, and the defenses with Mr. Bird?

18      THE DEFENDANT:  Yes.

19      THE COURT:  Among the factors that the Court will

20  consider in sentencing you are the Sentencing Reform Act of

21  1984 and the United States Sentencing Commission Guidelines.

22      Have you discussed the Guidelines with Mr. Bird?

23      THE COURT:  Has he explained to you the various

24  elements and factors that will be used to analyze your case

25  under the Guidelines?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that the Court will

3     not be able to determine the guideline sentence for your

4     case until a presentence report has been prepared by the

5     Probation Office, and you and the government have had an

6     opportunity to read it and to make any objections?

7          THE DEFENDANT:  I understand that, Your Honor.

8          THE COURT:  The presentence report will contain a

9     recommended guideline range.  There will be a high and a low

10    to the range.  That range is entirely advisory, which means

11    I could sentence you from no time in prison to the maximum

12    under the two statutes of 15 years.  Do you understand that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  The Court will independently consider

15    both the presentence report and any objections of the

16    parties and will analyze your case under the Guidelines

17    taking into account various factors such as the nature of

18    the charge against you, what your prior record is, if any,

19    whether you have accepted responsibility for the offense and

20    whether you have obstructed justice.

21         Do you understand that this is the general process

22    the Court will go through to analyze your case under the

23    Guidelines?

24         THE DEFENDANT:  I understand that.

25         THE COURT:  Do you also understand that the

1  guideline range is only advisory and that the Court may

2  depart from the Guideline and impose a sentence that is more

3  or less severe than called for by the Guidelines?

4       THE DEFENDANT:  I understand.

5       THE COURT:  In the end, it's the Court's duty to

6  impose a sentence that is reasonable in light of the

7  specific facts of this case, the Guidelines, and the

8  Sentencing Reform Act of 1984.  Do you understand this?

9       THE DEFENDANT:  I do.

10       THE COURT:  Do you understand that for all these

11  reasons neither Mr. Bird nor I nor anyone can tell you today

12  with certainty what Guidelines apply or what your sentence

13  will be?

14       THE DEFENDANT:  I understand that.

15       THE COURT:  Do you understand that if the sentence

16  which I ultimately impose is more severe than you anticipate

17  you will not be allowed to withdraw your plea?

18       THE DEFENDANT:  I understand that.

19       THE COURT:  As I indicated, a plea agreement has

20  been filed in this case.

21       Have you read the plea agreement?

22       THE DEFENDANT:  I have.

23       THE COURT:  Have you discussed the agreement and

24  all of its terms with your counsel?

25       THE DEFENDANT:  I have.

1    THE COURT:  Did you sign the plea agreement?

2    THE DEFENDANT:  Yes.

3    THE COURT:  Do you understand the plea agreement

4    and all of its terms?

5    THE DEFENDANT:  Yes.

6    THE COURT:  Would you like any additional time now

7    to discuss the plea agreement with Mr. Bird?

8    THE DEFENDANT:  No.

9    THE COURT:  Do you understand that the Court is

10   not a party to the plea agreement and is not bound by any of

11   its terms?

12   THE DEFENDANT:  I understand that.

13   THE COURT:  As part of the plea agreement, the

14   government has agreed to make certain recommendations at the

15   time of sentencing.

16   Do you understand that the Court is not a party to

17   the agreement and is not bound to follow any recommendation

18   which the government may make?

19   THE DEFENDANT:  I understand that, Your Honor.

20   THE COURT:  Again, this means that if I impose a

21   sentence that is more severe than you anticipate you will

22   not be allowed to withdraw your plea.  Do you understand

23   that?

24   THE DEFENDANT:  I understand.

25   THE COURT:  The plea agreement contains a limited

1    waiver of your right to appeal.

2          Mr. Tabacchi, would you recite those provisions,

3    please.

4          MR. TABACCHI:  Yes.

5          Before we move on, just to go back briefly to the

6    sentencing provisions, the government just wants to make

7    clear that the government in this case will be recommending

8    a sentence between 51 to 63 months under the Guidelines.

9    The United States has received information -- whether that

10   information is reliable or accurate or not -- that

11   Mr. Ketner has relayed to other individuals that he

12   anticipates the government will be recommending a two-year

13   sentence here.  I just want it to be perfectly clear that

14   that is not the case.  That is not the bargain that the

15   government has struck in this case.

16         MR. BIRD:  Your Honor, that's the first I have

17   heard of that.  I have no information about that.  I happen

18   to think that information is not only inaccurate, but it

19   must have been purposely passed onto the government for some

20   purpose of whoever it was who passed that on.  You can

21   certainly question the defendant about that.  That's the

22   first I have of it, and that's not our understanding in any

23   form or fashion.

24         MR. TABACCHI:  I don't bring this up in any way to

25   impune to Mr. Bird or Mr. Ketner that they have done this.

1    I just want to be clear.  I have been involved in cases

2    where on collateral review issues are brought up.  I just

3    want to be certain at this point in time that Mr. Ketner

4    understands what the government's obligations are in this

5    case.

6              THE COURT:  Well, I will be querying Mr. Ketner

7    shortly about whether there are any side agreements or other

8    understandings.

9              MR. TABACCHI:  I appreciate that.

10              THE COURT:  I think it's appropriate for the

11   government to make sure that there are no misapprehensions

12   on the part of Mr. Ketner or his counsel without impuning

13   either.

14              MR. BIRD:  I can assure you -- of course, we fully

15   expect that you are going to be continuing with your

16   questioning of the defendant and solicitation of all the

17   information you need in order to consider whether to accept

18   the plea, but there has been no such expectation that I am

19   aware of, and I don't believe that the defendant has any

20   such expectation in this instance because we have discussed

21   this at great length.

22              He understands that everything you have said to

23   him so far and everything you are about to say to him is in

24   fact the case as far as the Court's consideration of what

25   the sentence ought to be.  If Mr. Tabacchi wants to make his

1    record, that's fine, but I just want to make mine.

2            THE COURT:  Let's proceed to the waiver of appeal.

3            MR. TABACCHI:  Through the plea agreement, Mr.

4    Ketner is giving up the right to appeal the Court's

5    determination of the applicable Sentencing Guidelines range,

6    including the method by which the Court calculates that

7    range with the following exceptions:  Mr. Ketner can appeal

8    (a) any upward departure in offense level or criminal

9    history category; (b) any determination that the total

10   offense level is above 24; and (c) the Court's determination

11   of defendant's criminal history category.

12           Mr. Ketner retains the ability to appeal his

13   sentence on all other grounds, including in particular the

14   reasonableness of the sentence imposed by the Court, with

15   the exception that Mr. Ketner gives up the right to appeal

16   the following conditions of probation and/or supervised

17   release that may be imposed by the Court:  standard

18   conditions set forth in District Court General Orders 318

19   and 01-05; the drug conditions mandated by 18 USC Sections

20   3563(a)(5) and 3583(d); and the alcohol and drug use

21   conditions authorized by 18 USC Section 3563(b)(7).

22           Mr. Ketner also gives up any right to bring a

23   post-conviction collateral attack on the conviction or

24   sentence, including any order of restitution, except a

25   post-conviction collateral attack based on a claim of

1    ineffective assistance of counsel, a claim of newly

2    discovered evidence, or a retroactive change in the

3    applicable Sentencing Guidelines, sentencing statutes, or

4    statutes of conviction.

5         THE COURT:  Thank you.

6         Mr. Ketner, do you understand that by entering

7    into the plea agreement and agreeing to plead guilty you

8    have agreed to give up your right to appeal any sentence you

9    receive in accordance with the terms of the plea agreement?

10        THE DEFENDANT:  I do.

11        THE COURT:  Did you discuss waiving your right to

12   appeal with Mr. Bird?

13        THE DEFENDANT:  Yes.

14        THE COURT:  Based on that conversation and having

15   considered the matter, do you give up your right to appeal

16   in accordance with the terms of the plea agreement?

17        THE DEFENDANT:  I do.

18        THE COURT:  Are you a citizen of the

19   United States?

20        THE DEFENDANT:  Yes.

21        THE COURT:  Where were you born?

22        THE DEFENDANT:  Los Angeles, California.

23        THE COURT:  Do you understand that a plea of

24   guilty may deprive you of valuable civil rights such as the

25   right to vote, the right to hold public office, the right to

1  serve on a jury, and the right to possess any kind of a

2  firearm?

3          THE DEFENDANT:  I do.

4          THE COURT:  Do you understand that any federal

5  sentence imposed cannot run concurrently with any state

6  sentence that has not been imposed at the time of your

7  sentencing on the federal crime?

8          THE DEFENDANT:  I do.

9          THE COURT:  Have any promises been made to you in

10  exchange for your plea of guilty other than those set forth

11  in the plea agreement?

12          THE DEFENDANT:  No.

13          THE COURT:  Has anyone made any threats or used

14  any force against you or your family or anyone near and dear

15  to you to get you to plead guilty?

16          THE DEFENDANT:  No.

17          THE COURT:  Are you pleading guilty because you

18  are in fact guilty?

19          THE DEFENDANT:  I am.

20          THE COURT:  Other than what is contained in the

21  written plea agreement and other than a general discussion

22  of the guideline sentencing process with your counsel, has

23  anyone made you any promises of leniency, a particular

24  sentence, probation, or any other inducement of any kind to

25  get you to plead guilty?

1        THE DEFENDANT:  No.

2        THE COURT:  Have you been told by anyone what

3   specific sentence you will receive in the event that the

4   Court accepts your plea of guilty?

5        THE DEFENDANT:  No.

6        THE COURT:  Have you told Mr. Bird all the facts

7   and circumstances surrounding any statement, confession, or

8   other evidence that was obtained from you by anyone?

9        THE DEFENDANT:  I have.

10       THE COURT:  Mr. Tabacchi, what would the

11   government prove if the government proceeded to trial?

12       MR. TABACCHI:  If proceeded to trial, the

13   government would prove the following facts:

14       At all times relevant to this plea agreement,

15   Kenneth Ketner was one of the operators of Mortgage Capital

16   Resources hereinafter referred to as MCR, a mortgage

17   brokerage firm located in Orange County, California, and

18   elsewhere.  Drawing on lines of credit from commercial

19   lenders -- most notably, Household Commercial Financial

20   Services hereinafter referred to as Household -- MCR

21   purported to fund home loans for borrowers throughout the

22   country.

23       As part of its business, MCR requested on hundreds

24   of occasions that Household wire money from the line of

25   credit to fund specific mortgages.  In these requests, MCR

1  identified the specific borrower to whom these funds would

2  be disbursed.  Relying upon these representations, Household

3  agreed to fund the specified loans and wired money for that

4  purpose to a closing agent, Attorney Allen Johnson.

5  Household expected that MCR and Johnson would not use this

6  money for any purpose other than to fund the loans of the

7  identified borrowers.

8          Rather than complying with their promises and

9  representations to Household, Ketner, with the knowing

10  assistance of other MCR officers and employees, diverted for

11  improper and fraudulent uses the money earmarked for the

12  borrowers.  In this way and to facilitate this scheme,

13  Ketner improperly directed Johnson to transfer Household's

14  money from his attorney/client trust account to an

15  MCR-controlled account at La Salle Bank.  Acting on such

16  directions, Johnson diverted millions of dollars belonging

17  to Household to MCR's accounts.  With the knowing assistance

18  of other MCR officers and employees, Ketner then used this

19  money to operate MCR and to pay his own personal expenses,

20  such as payments on his house, boat, and credit cards.

21          Having improperly diverted this money to his own

22  benefit and for his own purposes, Ketner and MCR could not

23  fund many of the mortgages for which Household had wired

24  money.  To conceal this fact, Ketner instructed his

25  employees to fund their way out of this problem.  More