precisely, he caused MCR to find new loans that Household would agree to fund. Ketner then caused the money earmarked for these new loans to pay off the original borrowers whose funds had been misappropriated.

To further this scheme, on or about May 22, 2000, Ketner caused Household to wire approximately $346,500 from its accounts in Illinois to Johnson's client trust account at Sanwa Bank in California. In causing this wire transfer, Ketner did not intend to use the money as promised, namely, to fund the loans of borrowers identified in the wire transfer requests. Rather, Ketner intended to divert these proceeds to fund the loans of borrowers whose money MCR had already misappropriated. As a result of this scheme, including his misappropriation and diversion of funds, Ketner caused Household and other lenders to suffer approximately $9.2 million in losses.

Ketner also laundered a portion of the money that MCR received as a result of this scheme. Having fraudulently caused Household to wire money to Johnson's client trust account, Ketner then caused Johnson to transfer the proceeds from this fraud to MCR's account at La Salle Bank. From this location, Ketner caused the proceeds from the fraud to be further disbursed to other bank accounts in the United States. For instance, on or about May 22, 2000, Ketner caused to be wired from Johnson's bank account at

1   Sanwa Bank to one of MCR's accounts at La Salle Bank
2   $335,000 that Ketner knew was derived from his wire fraud
3   scheme.
4          THE COURT:  Sir, do you understand what the
5   Assistant United States Attorney has said?
6          THE DEFENDANT:  Yes.
7          THE COURT:  Is everything the Assistant
8   United States Attorney said about you and about your conduct
9   and intent true and correct?
10         THE DEFENDANT:  May I just talk to my counsel for
11  one moment?
12         THE COURT:  Sure.
13         (Counsel and defendant conferring.)
14         THE COURT:  Let me repeat the question.
15         Is everything the Assistant United States Attorney
16  has said about you and about your conduct and intent true
17  and correct?
18         THE DEFENDANT:  It is true and correct as to my
19  intent and conduct.  There are some statements I disagree
20  with in it, but basically I am guilty of what I am agreeing
21  to plead guilty to.
22         THE COURT:  What factual statements do you
23  disagree with?
24         THE DEFENDANT:  I disagree with the --
25         MR. BIRD:  Your Honor, perhaps I could

1  characterize what -- and then he can either agree or
2  disagree with my characterization.
3       The one point that concerns him is the statement
4  about the payments for his house, boat, and credit cards.
5  There were payments made out of the MCR accounts for those
6  purposes, and that's what he has acknowledged and admits.
7       Isn't that correct, Mr. Ketner?
8       THE DEFENDANT: Yes.
9       THE COURT: Well, I want to be clear on the record
10 what it is you don't agree with.
11      (Counsel and defendant conferring.)
12      THE DEFENDANT: The money was used for a lot of
13 purposes, and I will comply with the wording of what
14 Mr. Tabacchi read. I will agree to the wording that
15 Mr. Tabacchi read.
16      THE COURT: Is it accurate?
17      MR. BIRD: I think the point is this, Your Honor,
18 that the money that went into the MCR accounts was used for
19 a lot of purposes. I think what is a problem for Mr. Ketner
20 is that this reads as if those were the only two purposes,
21 to run MCR and to pay his personal expenses. He is not
22 contesting that there was money taken out of MCR to pay
23 those expenses.
24      THE COURT: Okay.
25      Is that correct?

```
 1              THE DEFENDANT:  Correct.
 2              THE COURT:  Are you pleading guilty because you in
 3   fact did the acts charged in Counts 9 and 16 of the
 4   Indictment?
 5              THE DEFENDANT:  Yes.
 6              THE COURT:  Tell me in your own words what you
 7   did, sir.
 8              THE DEFENDANT:  I knowingly participated in
 9   diverting borrowers' money for purposes other than
10   designated in the -- that the original designation for the
11   purposes of those funds were.  That was done by wire
12   transfers, and the money was commingled and laundered and
13   used to pay other expenses that weren't called for.
14              THE COURT:  Did you in fact cause a transfer to be
15   made by Household on or about May 22, 2000, in the amount of
16   approximately $346,500 to Johnson's trust account at Sanwa
17   Bank?
18              THE DEFENDANT:  Yes.
19              THE COURT:  Did you know that that transfer was
20   made for the purpose of diverting the funds for an
21   impermissible use?
22              THE DEFENDANT:  Yes.
23              THE COURT:  Were you aware that the transfer was
24   made in interstate commerce, namely, from Illinois to
25   California?
```

```
 1              THE DEFENDANT:  Yes, Your Honor.
 2              THE COURT:  Did you in fact cause a transfer on or
 3   about May 22, 2000, of $335,000 approximately from MCR's
 4   account at La Salle Bank -- well, from Johnson's bank
 5   account at Sanwa to one of MCR's accounts at La Salle Bank?
 6              THE DEFENDANT:  I did, Your Honor.
 7              THE COURT:  Did you know that those funds were
 8   part of an illegal scheme?
 9              THE DEFENDANT:  Yes.
10              THE COURT:  Sir, are you pleading guilty because
11   you are in fact guilty?
12              THE DEFENDANT:  Yes.
13              THE COURT:  Is the government satisfied with the
14   factual basis for the plea?
15              MR. TABACCHI:  Yes.
16              THE COURT:  Mr. Bird, have you reviewed the facts
17   of the case?
18              MR. BIRD:  I have.
19              THE COURT:  Have you reviewed all the discovery
20   that may have been provided to you by the government?
21              MR. BIRD:  A large portion of it.  There is
22   still -- yes, we have.
23              THE COURT:  I realize we are talking about some
24   300 plus boxes if we get to the --
25              MR. BIRD:  Yes, well in excess.
```

1     THE COURT: Do you believe that you have conducted
2  a sufficient inquiry to competently advise your client in
3  this case?
4     MR. BIRD: Yes, I do.
5     THE DEFENDANT: Your Honor, may I talk to my
6  attorney one more time?
7     THE COURT: Sure.
8     (Counsel and defendant conferring.)
9     MR. BIRD: Your Honor, there are a lot of facts in
10 this case, and I am not sure that either the government or
11 the defense is aware of all of them.  The reason that
12 Mr. Ketner has taken issue and wants to take issue again is
13 that there are facts that I think he is aware of that maybe
14 the attorneys in this case aren't fully aware of.
15    The one that he has just brought to my attention
16 has nothing to do with the substance of the plea he has
17 entered.  It has to do with a detail, and I will tell you
18 what that is in a moment, but I want to explain why it is
19 that he has paused to talk to counsel in these two
20 instances.
21    What he is concerned about today -- and rightfully
22 so -- is that he be entirely accurate with the Court and
23 honest.  He doesn't want to say something here if it's not
24 true.  To be more specific about this last point, he says
25 that the -- and this is something that frankly counsel --

both counsel should have caught before, but he is saying that the transfer that's referred to on May 22, 2000, was actually from a Bank of America account as opposed to the La Salle Bank.

Is thay correct?

THE DEFENDANT: It was to a Bank of America account I believe instead of a La Salle Bank account. I just don't want to be not accurate with you, Your Honor.

THE COURT: The transfer nevertheless was one in interstate commerce?

THE DEFENDANT: Correct.

THE COURT: Have you reviewed the facts of the case to the extent they relate to the counts to which he's pleading?

MR. BIRD: Yes.

THE COURT: And the discovery as well?

MR. BIRD: Yes.

THE COURT: And at least as to the counts to which Mr. Ketner is pleading, have you reviewed with him the facts of the case as well as any discovery that may have been provided by the government?

MR. BIRD: I have with the exception of that one detail, which I thought we had in mind but we didn't. We have reviewed the facts, yes.

THE COURT: Have you advised Mr. Ketner concerning

1  the legality or admissibilty of any statements or
2  confessions or other evidence the government may have
3  against him?
4          MR. BIRD:  Yes.
5          THE COURT:  Is the defendant pleading guilty
6  because of any illegally obtained evidence in the possession
7  of the government that you are aware of?
8          MR. BIRD:  No.
9          THE COURT:  Did you explore with your client any
10 possible defenses he may have?
11         MR. BIRD:  Yes.
12         THE COURT:  Do you believe that there is a factual
13 basis for the plea which the defendant is offering to enter?
14         THE DEFENDANT:  I do.
15         THE COURT:  Have you conferred with and advised
16 your client regarding this guilty plea?
17         MR. BIRD:  Yes.
18         THE COURT:  Do you believe that the plea is being
19 made freely and voluntarily with a full understanding of the
20 charges and the consequences of the plea?
21         MR. BIRD:  Yes.
22         THE COURT:  The plea agreement indicates that it
23 was signed by Mr. Ketner on July 15, 2006, and by Mr. Kluck
24 on July 17, 2006.
25         Did you personally have a conversation with Mr.

Case 8:05-cr-00036-JVS   Document 199-1   Filed 10/02/07   Page 9 of 17   Page ID #:2799

32

Ketner with regard to the plea agreement prior to the time he signed it?

MR. BIRD: Oh, yes.

THE COURT: Do you feel that you adequately informed him of your advice and counsel with regard to the plea agreement?

MR. BIRD: I do.

THE COURT: Did you have an opportunity to respond to any questions and concerns he may have had with regard to the plea agreement?

MR. BIRD: Yes.

THE COURT: Did all of that occur prior to his signing the plea agreement?

MR. BIRD: Oh, yes.

THE COURT: Does the plea agreement represent the entire disposition of this case insofar as you, your client, and the U.S. Attorney's Office is concerned?

MR. BIRD: It does. We have had discussions which are not part of this plea agreement and which are not promises made in the sense that the Court has used them about an opportunity to present additional information to the government, and we understand that the government has made no promises as to what the consequence of that will be, but with that exception, the plea agreement does include the representations.

1  THE COURT: Have there been any promises,
2  representations, or guarantees made either to you or your
3  client other than what's set forth in the plea agreement?
4  MR. BIRD: No.
5  THE COURT: Other than what's contained in the
6  written plea agreement and other than a general discussion
7  of the guideline sentencing process, have you made any
8  indication to Mr. Ketner of what specific sentence the Court
9  would impose or convey to him any promise of a particular
10 sentence in the event that the Court accepts his plea of
11 guilty?
12 MR. BIRD: No. We have discussed the guideline
13 range, Booker, the effect of Booker, the freedom that the
14 Court has in imposing sentences, and we have discussed the
15 practical effect of the agreement with the government
16 concerning the guideline range, but we have not represented
17 to him that there is any way of knowing as we stand here
18 today what that ultimate sentence will be.
19 THE COURT: In your judgment, is it in your
20 client's best interests and the interests of justice for me
21 to accept this plea?
22 MR. BIRD: It is.
23 THE COURT: In coming to the conclusion that it
24 was in your client's best interests, have you taken into
25 account the various motions which Mr. Ketner made

1  challenging an alleged conflict of interest in the
2  government's prosecution?
3  　　　　　MR. BIRD:  I have.
4  　　　　　THE COURT:  Have you concluded notwithstanding
5  those arguments and the possibility of relief on appeal that
6  it's still in his best interests to enter into this plea
7  agreement?
8  　　　　　MR. BIRD:  Yes.
9  　　　　　THE COURT:  Do you join in the waiver of jury
10 trial and concur in the plea?
11 　　　　　MR. BIRD:  I do.
12 　　　　　THE COURT:  Mr. Tabacchi, other than what's
13 expressly contained in the written plea agreement, has the
14 government made any other promises, representations, or
15 guarantees either to the defendant or his counsel?
16 　　　　　MR. TABACCHI:  No.
17 　　　　　THE COURT:  Is the intended plea agreement part of
18 any joint agreement with any other defendant or potential
19 defendant?
20 　　　　　MR. TABACCHI:  No.
21 　　　　　THE COURT:  Mr. Ketner, are you satisfied with the
22 representation which Mr. Bird and his colleagues have
23 provided to you?
24 　　　　　THE DEFENDANT:  I am.
25 　　　　　THE COURT:  Do you feel that your counsel has

1   fully considered any defenses you may have to the charges?

2           THE DEFENDANT: I do.

3           THE COURT: Do you believe that your counsel has
4   fully advised you concerning this matter?

5           THE DEFENDANT: I do.

6           THE COURT: Do you feel that you have had enough
7   time to discuss this matter with Mr. Bird and his
8   colleagues?

9           THE DEFENDANT: I have.

10          THE COURT: Would you like any additional time
11  now?

12          THE DEFENDANT: No.

13          THE COURT: Mr. Bird or anyone tell you how to
14  answer any of the questions I have asked today?

15          THE DEFENDANT: No.

16          THE COURT: Do you feel that you understand
17  everything that is going on here today, the consequences to
18  you, and that you are competent to make the decision to
19  plead guilty?

20          THE DEFENDANT: I do.

21          THE COURT: Do you know of any reason why the
22  Court should not accept your plea of guilty?

23          THE DEFENDANT: No, Your Honor.

24          THE COURT: Do you understand then that all that
25  is left in your case in the event that I accept your plea of

```
 1   guilty is the imposition of sentence which may include
 2   imprisonment under the Federal Guidelines?
 3           THE DEFENDANT:  I understand that.
 4           THE COURT:  Having in mind all we have discussed
 5   regarding your plea of guilty, the rights you will be giving
 6   up, and the maximum sentence you might receive, is it still
 7   your desire to plead guilty?
 8           THE DEFENDANT:  Yes.
 9           THE COURT:  How do you plead to Count 9 of the
10   Indictment?
11           THE DEFENDANT:  Guilty.
12           THE COURT:  How do you plead to Count 16 of the
13   Indictment?
14           THE DEFENDANT:  Guilty.
15           THE COURT:  I am going to make certain findings.
16   If you don't understand what I say or if you disagree with
17   what I say or if you would like to consult with Mr. Bird,
18   please interrupt me or ask him to interrupt me.
19           The Court having questioned the defendant and his
20   counsel on his offer to plead guilty to Counts 9 and 16 of
21   the Indictment, each a felony, the defendant and his counsel
22   having advised the Court that they have conferred concerning
23   the offered pleas of guilty and all aspects of the charges
24   against the defendant and any defenses he may have, and the
25   Court having observed the defendant's intelligence,
```

37

1  demeanor, and attitude while answering questions, and the
2  Court having observed that the defendant does not appear to
3  be under the influence of any medicine, drug, or other
4  substance or factor which might affect his actions or
5  judgment in any manner, the Court now therefore finds that
6  there is a factual basis for the plea.
7        The Court finds that Kenneth Ketner has entered
8  his plea freely and voluntarily with a full understanding of
9  the charges against him and the consequences of his plea.
10       The Court finds that the defendant understands his
11 constitutional and statutory rights and wishes to waive
12 them.
13       Accordingly, it is ordered that the plea be
14 accepted and entered in the records of this court.
15       The clerk will now give you a date for sentencing.
16       THE CLERK: November 6, 2006, at 9:30 a.m.
17       MR. BIRD: Could I have a moment to speak with
18 Mr. Tabacchi?
19       (Counsel conferring.)
20       MR. TABACCHI: Your Honor, the parties have
21 previously spoke about this, and I apologize for not
22 bringing with the court clerk prior, but I think the parties
23 had hoped for perhaps a sentencing in late November or early
24 December if the Court is available.
25       THE COURT: What do you propose?

```
 1              MR. TABACCHI:  The government is generally
 2   available in late November and early December, so it's
 3   really at the convenience of the Court and defense counsel.
 4              MR. BIRD:  Actually I am scheduled to be in trial
 5   starting the end of November, so if we could do it -- how
 6   about the 21st?
 7              THE COURT:  Of what?
 8              MR. BIRD:  Of November.  It's a Tuesday -- oh, you
 9   do it on Mondays.
10              THE COURT:  Right.
11              MR. BIRD:  If we could do it in the afternoon.
12              THE COURT:  I would be happy to do that.  I will
13   give you that date if you want it, but it is Thanksgiving
14   week.
15              MR. BIRD:  We could move it to December 4.
16              THE COURT:  That's fine, 9:30 a.m., December 4,
17   2006.
18              Mr. Ketner, I order you to appear on that date and
19   at that time without further of the Court.
20              In the meantime, the case will be referred to the
21   Probation Office for the preparation of a presentence
22   report.  You will be asked to give information for the
23   report.  You will receive a copy of the report, and you will
24   have an opportunity to make any objections.  You will also
25   have an opportunity to speak at the sentencing hearing.  I
```

```
 1  urge you to consult with Mr. Bird so that he can answer any
 2  questions you may have concerning the process.
 3           Anything further for today?
 4           MR. TABACCHI:  Not on the behalf of the
 5  United States.
 6           THE COURT:  Is the government aware of any
 7  violations of pretrial release?
 8           MR. TABACCHI:  No.
 9           THE COURT:  Does the government stipulate that
10  Mr. Ketner is neither a flight risk nor a danger to the
11  community?
12           MR. TABACCHI:  At this time, yes.
13           THE COURT:  I find that the statutory requirements
14  have been fulfilled and the defendant is to remain free on
15  bond.
16           MR. BIRD:  Thank you.
17           MR. TABACCHI:  Thank you.
18              (Proceedings were adjourned.)
19                        -oOo-
20
21
22
23
24
25
```

40

```
 1                            -oOo-

 2

 3                          CERTIFICATE

 4

 5          I hereby certify that pursuant to Section 753,

 6   Title 28, United States Code, the foregoing is a true and

 7   correct transcript of the stenographically reported

 8   proceedings held in the above-entitled matter and that the

 9   transcript page format is in conformance with the

10   regulations of the Judicial Conference of the United States.

11

12   Date:   November 7, 2006

13

14
                              Sharon A. Seffens      11/7/06
15                            _____
                              SHARON A. SEFFENS, U.S. COURT REPORTER
16

17

...
25
```