1       **UNITED STATES DISTRICT COURT**

2       **CENTRAL DISTRICT OF CALIFORNIA**

3       **SOUTHERN DIVISION AT SANTA ANA**

4       HONORABLE JAMES V. SELNA, JUDGE PRESIDING

5

6

7    UNITED STATES OF AMERICA,      )

                              )

7           PLAINTIFF,     )

8                              )

            VS.            ) SACR NO. 05-36-JVS

9                              )

    ALLEN JOHNSON,            )

10                              )

           DEFENDANT.     )

11   _____)

12

13

14        REPORTER'S TRANSCRIPT OF PROCEEDINGS

15           SANTA ANA, CALIFORNIA

16           FRIDAY, MARCH 18, 2005

17              9:00 A.M.

18

19

20        **DEBORAH D. PARKER, CSR 10342**

              **OFFICIAL COURT REPORTER**

          **UNITED STATES DISTRICT COURT**

21           **411 WEST FOURTH STREET**

              **SUITE 1-053**

22       **SANTA ANA, CALIFORNIA 92701**

              **(714) 542-8409**

23          **D.PARKER@IX.NETCOM.COM**

24

25

```
1    APPEARANCES OF COUNSEL:

2

3        FOR THE PLAINTIFF, UNITED STATES OF AMERICA:

4                        THOMAS P. O'BRIEN
                         UNITED STATES ATTORNEY
5
                         ROBB C. ADKINS
6                        ASSISTANT UNITED STATES ATTORNEY
                         CHIEF, CRIMINAL DIVISION
7
                         ANDREW STOLPER
8                        ASSISTANT UNITED STATES ATTORNEY
                         UNITED STATES DISTRICT COURT
9                        8000 RONALD REAGAN FEDERAL BUILDING
                         SANTA ANA, CALIFORNIA  92701
10                       (714) 338-3500

11

12

13       FOR THE DEFENDANT, ALLEN JOHNSON:

14                       JAMES RIDDET
                         STOKKE & RIDDET
15                       3 IMPERIAL PROMENADE
                         SUITE 750
16                       SANTA ANA, CALIFORNIA 92707
                         (714) 662-2400
17

18

19

20

21

22

23

24

25
```

```
 1      SANTA ANA, CALIFORNIA; FRIDAY, MARCH 18, 2005; 9:00 A.M.

 2              THE CLERK:  PLEASE BE SEATED AND COME TO ORDER.

 3              SACR 05-36-JVS, UNITED STATES OF AMERICA VERSUS

 4   ALLEN JOHNSON.

 5              COUNSEL, PLEASE STATE YOUR APPEARANCES.

 6              MR. STOLPER:  GOOD MORNING, YOUR HONOR.

 7              ANDREW STOLPER ON BEHALF OF THE GOVERNMENT.

 8              MR. RIDDET:  GOOD MORNING, YOUR HONOR.

 9              JAMES RIDDET FOR MR. JOHNSON.  HE'S WITH ME AT THE

10   LECTERN.

11              THE COURT:  GOOD MORNING.

12              MR. RIDDET, I UNDERSTAND THERE WILL BE A CHANGE OF

13   PLEA THIS MORNING.

14              MR. RIDDET:  YES, YOUR HONOR.

15              THE COURT:  I NOTE THAT A PLEA AGREEMENT WAS FILED

16   IN THIS MATTER ON MARCH 14TH, 2005.

17              I WILL DIRECT THAT THE PLEA AGREEMENT WILL BE MADE

18   A PART OF THESE PROCEEDINGS.

19              GOOD MORNING, MR. JOHNSON.

20              DEFENDANT JOHNSON:  GOOD MORNING.

21              THE COURT:  SIR, BEFORE I ACCEPT YOUR PLEA OF

22   GUILTY, I MUST SATISFY MYSELF THAT YOU UNDERSTAND THE NATURE

23   OF THE CHARGES AGAINST YOU, ANY POSSIBLE PUNISHMENT YOU MAY

24   RECEIVE AND THAT YOU ALSO UNDERSTAND THE CONSTITUTIONAL AND

25   STATUTORY RIGHTS YOU WILL BE GIVING UP BY PLEADING GUILTY.
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1    FOR THAT REASON, I'M GOING TO ASK YOU A NUMBER OF QUESTIONS.
 2    IF ANY OF MY QUESTIONS ARE NOT CLEAR, I'LL BE GLAD TO
 3    REPHRASE THEM; PLEASE JUST LET ME KNOW THAT.
 4              YOU HAVE THE RIGHT TO CONSULT WITH MR. RIDDET AT
 5    ANY TIME.  HE'S HERE FOR YOUR BENEFIT.  SO, IF AT ANY POINT
 6    DURING THESE PROCEEDINGS YOU WOULD LIKE TO CONSULT WITH HIM,
 7    PLEASE JUST LET ME KNOW.
 8              DEFENDANT JOHNSON:  OKAY.
 9              THE COURT:  THE CLERK IS GOING TO PUT YOU UNDER
10    OATH AT THIS TIME.
11              THE CLERK:  PLEASE RAISE YOUR RIGHT HAND.
12               ALLEN EDWARD JOHNSON, DEFENDANT, SWORN
13              DEFENDANT JOHNSON:  I DO.
14              THE COURT:  SIR, DO YOU UNDERSTAND THAT YOU ARE
15    NOW UNDER OATH; THAT IF YOU ANSWER ANY OF MY QUESTIONS
16    FALSELY, YOU COULD BE PROSECUTED LATER FOR PERJURY OR THE
17    MAKING OF A FALSE STATEMENT?
18              DEFENDANT JOHNSON:  YES.
19              THE COURT:  STATE YOUR TRUE AND CORRECT NAME,
20    PLEASE.
21              DEFENDANT JOHNSON:  ALLEN EDWARD JOHNSON.
22              THE COURT:  HOW OLD ARE YOU, SIR?
23              DEFENDANT JOHNSON:  58.
24              THE COURT:  TELL ME ABOUT YOUR EDUCATIONAL
25    BACKGROUND, PLEASE.
```

1     DEFENDANT JOHNSON:  I HAVE A BACHELOR'S DEGREE IN

2  ECONOMICS FROM UC SANTA BARBARA.  I'VE GOT A JD FROM

3  CALIFORNIA WESTERN SCHOOL OF LAW IN SAN DIEGO.

4     THE COURT:  ARE YOU ADMITTED TO THE BAR?

5     DEFENDANT JOHNSON:  YES.

6     THE COURT:  IS YOUR MEMBERSHIP CURRENTLY ACTIVE?

7     DEFENDANT JOHNSON:  YES.

8     THE COURT:  HAVE YOU EVER PRACTICED CRIMINAL LAW?

9     DEFENDANT JOHNSON:  NO.

10     THE COURT:  HAVE YOU RECENTLY BEEN TREATED FOR ANY

11  MENTAL ILLNESS OR ADDICTION TO NARCOTICS?

12     DEFENDANT JOHNSON:  NO.  THE ONLY ILLNESS I HAVE

13  IS RHEUMATOID ARTHRITIS.

14     THE COURT:  HAVE YOU TAKEN ANY MEDICATION, DRUGS

15  OR ALCOHOL WITHIN THE PAST 72 HOURS?

16     DEFENDANT JOHNSON:  NO.

17     THE COURT:  HAVE YOU TAKEN ANY TREATMENT FOR YOUR

18  ARTHRITIS?

19     DEFENDANT JOHNSON:  NO, I DON'T TAKE ANYTHING FOR

20  IT ANYMORE.

21     THE COURT:  DO YOU SUFFER FROM ANY MENTAL

22  CONDITION THAT WILL PREVENT YOU FROM UNDERSTANDING FULLY THE

23  CHARGES AGAINST YOU AND THE CONSEQUENCES OF ANY GUILTY PLEA

24  YOU MAY ENTER?

25     DEFENDANT JOHNSON:  DO I UNDERSTAND?

```
 1              THE COURT:  RIGHT.  DO YOU SUFFER FROM ANY MENTAL

 2   CONDITION THAT WOULD PREVENT YOU FROM UNDERSTANDING FULLY

 3   THE NATURE OF THE CHARGES AND ANY PUNISHMENT YOU MIGHT

 4   RECEIVE?

 5              DEFENDANT JOHNSON:  NO, I DON'T.

 6              THE COURT:  IS THERE ANY REASON WHY WE CAN'T GO

 7   FORWARD WITH YOUR PLEA OF GUILTY THIS MORNING?

 8              DEFENDANT JOHNSON:  NO, I DON'T BELIEVE SO.

 9              THE COURT:  YOU FEEL ALERT TODAY?

10              DEFENDANT JOHNSON:  YES.

11              THE COURT:  DO YOU FEEL YOUR HEALTH IS GOOD TODAY?

12              DEFENDANT JOHNSON:  REASONABLY, YES.

13              THE COURT:  MR. RIDDET, HAVE YOU HAD OPPORTUNITY

14   TO SPEAK WITH YOUR CLIENT PRIOR TO THESE PROCEEDINGS?

15              MR. RIDDET:  I HAVE, YOUR HONOR.

16              THE COURT:  DO YOU HAVE ANY REASON TO BELIEVE THAT

17   MR. JOHNSON IS NOT COMPETENT TO ENTER HIS PLEA AT THIS TIME?

18              MR. RIDDET:  NONE, WHATSOEVER.

19              THE COURT:  IS THERE ANY REASON AT ALL WHY WE

20   CANNOT GO FORWARD?

21              MR. RIDDET:  NOT THAT I KNOW OF, YOUR HONOR.

22              THE COURT:  IN YOUR OPINION IS YOUR CLIENT IN FULL

23   POSSESSION OF HIS FACULTIES?

24              MR. RIDDET:  YES.

25              THE COURT:  BASED ON THE COURT'S OBSERVATIONS OF
```

1    THE DEFENDANT, THE DEFENDANT'S RESPONSE AND THE RESPONSES OF

2    COUNSEL, THE COURT FINDS THAT THE DEFENDANT IS IN THE FULL

3    POSSESSION OF HIS FACULTIES.

4              SIR, YOU HAVE A NUMBER OF CONSTITUTIONAL RIGHTS

5    YOU WILL BE GIVING UP BY PLEADING GUILTY.  AT THIS TIME, I'M

6    GOING TO TELL YOU ABOUT THOSE RIGHTS:  YOU HAVE THE RIGHT TO

7    A SPEEDY AND PUBLIC TRIAL.  YOU HAVE THE RIGHT TO BE TRIED

8    BY A JURY.  ALTERNATIVELY, YOU HAVE THE RIGHT TO WAIVE JURY

9    TRIAL AND TO BE TRIED BY THE COURT.  IN EITHER CASE, YOU

10   HAVE THE RIGHT TO PERSIST IN YOUR PLEA OF NOT GUILTY AND YOU

11   HAVE THE RIGHT TO MAKE THE GOVERNMENT PROVE THAT YOU ARE IN

12   FACT GUILTY BEYOND A REASONABLE DOUBT.

13             YOU HAVE THE RIGHT TO BE REPRESENTED BY AN

14   ATTORNEY THROUGHOUT THESE PROCEEDINGS; AND IF YOU CANNOT

15   AFFORD ONE, ONE WILL BE APPOINTED FOR YOU FREE OF CHARGE.

16   YOU HAVE THE RIGHT TO CONFRONT AND CROSS-EXAMINE ALL

17   WITNESSES CALLED TO TESTIFY AGAINST YOU.  YOU HAVE THE RIGHT

18   TO PRESENT WITNESSES ON YOUR OWN BEHALF AND YOU HAVE THE

19   RIGHT TO SUBPOENA WITNESSES.  YOU ALSO HAVE THE PRIVILEGE

20   AGAINST SELF-INCRIMINATION; THAT IS, THE RIGHT TO REMAIN

21   SILENT.  HOWEVER, BY ENTERING A PLEA OF GUILTY, YOU ARE

22   GIVING UP THAT RIGHT BECAUSE YOU ARE IN FACT INCRIMINATING

23   YOURSELF.

24             YOU HAVE THE RIGHT TO TESTIFY ON YOUR OWN BEHALF,

25   BUT YOU CANNOT BE COMPELLED TO DO SO OR TO INCRIMINATE

1    YOURSELF IN ANY WAY.  IF YOU DO NOT TESTIFY, THAT FACT

2    CANNOT BE USED AGAINST YOU AT TRIAL.

3            IN THE EVENT OF A CONVICTION AFTER TRIAL, YOU HAVE

4    THE RIGHT TO APPEAL THE CONVICTION AND THE SENTENCE.

5            HAVE YOU DISCUSSED THESE RIGHTS WITH MR. RIDDET?

6            DEFENDANT JOHNSON:  YES, I HAVE, YOUR HONOR.

7            THE COURT:  WOULD YOU LIKE ANY ADDITIONAL TIME TO

8    DISCUSS THESE RIGHTS WITH HIM?

9            DEFENDANT JOHNSON:  NO, I DON'T NEED THE TIME.

10   THANK YOU.

11           THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THESE

12   RIGHTS AND IF THE COURT ACCEPTS YOUR PLEA OF GUILTY, YOU

13   WILL BE GIVING UP THE RIGHT TO A JURY TRIAL AND ALL THE

14   RIGHTS I HAVE JUST DESCRIBED TO YOU?

15           DEFENDANT JOHNSON:  YES.

16           THE COURT:  DO YOU GIVE UP THESE RIGHTS?

17           DEFENDANT JOHNSON:  YES, I DO.

18           MR. RIDDET:  I ASSUME THAT EXCEPTS HIS RIGHT TO

19   COUNSEL IN THESE PROCEEDINGS WITH THE PLEA AND THE

20   SENTENCING.  HE'S CERTAINLY NOT GIVING THAT UP.

21           THE COURT:  OF COURSE NOT.  I ADVISED HIM THAT HE

22   HAD THE RIGHT TO COUNSEL AND HE HAD THE RIGHT TO COUNSEL IF

23   HE COULDN'T AFFORD IT.  OF COURSE, HE HAS THE RIGHT TO HIS

24   OWN COUNSEL AND HE DOES HAVE HIS OWN COUNSEL HERE TODAY.

25           MR. RIDDET, ARE YOU SATISFIED THAT EACH OF THESE

```
 1    WAIVERS HAVE BEEN MADE KNOWINGLY AND VOLUNTARILY?

 2            MR. RIDDET:  I AM, YOUR HONOR.

 3            THE COURT:  DO YOU JOIN IN AND CONCUR IN EACH OF

 4    THE WAIVERS?

 5            MR. RIDDET:  YES.

 6            THE COURT:  SIR, PURSUANT TO THE PLEA AGREEMENT,

 7    YOU'VE AGREED TO PLEAD GUILTY TO COUNTS TWO THROUGH SEVEN OF

 8    THE INDICTMENT, WHICH ARE VIOLATIONS OF SECTIONS 2, 1343 AND

 9    1346 OF TITLE 18 AND COUNT 15 OF THE INDICTMENT, VIOLATION

10    OF 18 U.S.C., SECTION 1956(H) FOR CONSPIRACY.  EACH OF THE

11    CHARGES BEING FELONIES.

12            MR. STOLPER, WOULD YOU STATE THE ELEMENTS OF EACH

13    OF THE CHARGES, PLEASE.

14            MR. STOLPER:  CERTAINLY, YOUR HONOR.

15            WITH RESPECT TO TITLE 18, UNITED STATES CODE

16    SECTIONS 1343, 1346 AND 2, WHICH ARE CHARGED IN COUNTS TWO

17    THROUGH SEVEN OF THE INDICTMENT, THE ELEMENTS ARE AS

18    FOLLOWS:

19            THE DEFENDANT KNOWINGLY CARRIED OUT A SCHEME OR

20    PLAN TO DEPRIVE WAREHOUSE LENDERS OF THEIR INTANGIBLE RIGHT

21    OF HONEST SERVICES.  THE DEFENDANT ACTED WITH THE INTENT TO

22    DEPRIVE THE WAREHOUSE LENDERS OF THE INTANGIBLE RIGHT OF

23    HONEST SERVICES AND THE DEFENDANT USED OR CAUSED SOMEONE TO

24    USE WIRE COMMUNICATIONS AND COMMERCE TO CARRY OUT OR ATTEMPT

25    TO CARRY OUT THE SCHEME OR PLAN.
```

```
 1              WITH RESPECT TO COUNT 15, WHICH CHARGES THE
 2   VIOLATION OF 18 USC, SECTION 1956(H), THE FOLLOWING MUST BE
 3   TRUE:  THERE WAS AN AGREEMENT BETWEEN TWO OR MORE PERSONS TO
 4   COMMIT AT LEAST ONE OFFENSE AS CHARGED IN THE INDICTMENT AND
 5   THE DEFENDANT BECAME A MEMBER OF THE CONSPIRACY KNOWING OF
 6   AT LEAST ONE OF ITS OBJECTS AND ATTEMPTING TO HELP
 7   ACCOMPLISH IT.
 8              THE COURT:  THANK YOU.  MR. JOHNSON, DO YOU
 9   UNDERSTAND THE NATURE OF THE CHARGES?
10              DEFENDANT JOHNSON:  YES, I DO, YOUR HONOR.
11              THE COURT:  HAVE YOU DISCUSSED THE CHARGES AND
12   EACH OF THE ELEMENTS WITH MR. RIDDET?
13              DEFENDANT JOHNSON:  YES, I HAVE.
14              THE COURT:  DO YOU HAVE ANY QUESTIONS ABOUT THE
15   CHARGES AGAINST YOU?
16              DEFENDANT JOHNSON:  NO, I DON'T.
17              THE COURT:  HAVE YOU BEEN ADVISED OF THE MAXIMUM
18   PENALTIES THAT CAN BE IMPOSED FOR THE CHARGES TO WHICH YOU
19   ARE OFFERING TO PLEAD GUILTY?
20              DEFENDANT JOHNSON:  I HAVE, YOUR HONOR.
21              THE COURT:  MR. STOLPER, WOULD YOU STATE THE
22   MAXIMUMS, AND IF THERE ARE ANY STATUTORY MINIMUMS, WOULD YOU
23   STATE THOSE PLEASE, ALSO.
24              MR. STOLPER:  SURE, YOUR HONOR.  THERE ARE NO
25   STATUTORY MINIMUMS IN THE CASE.
```

1          IN THE EVENT THE DEFENDANT IS CONVICTED ON ALL

2     COUNTS HE IS CHARGED AGAINST THE INDICTMENT, THE STATUTORY

3     MAXIMUM IS:  40 YEARS' IMPRISONMENT; A THREE-YEAR PERIOD OF

4     SUPERVISED RELEASE; A FINE OF $1,750,000 OR TWICE THE GROSS

5     GAIN OR GROSS LOSS, RESULTING FROM THE OFFENSES, WHICHEVER

6     IS GREATEST, AND A MANDATORY SPECIAL ASSESSMENT OF $700.

7          THE COURT:  THANK YOU.

8          MR. JOHNSON, DO YOU UNDERSTAND THAT THERE IS NO

9     PAROLE AND THAT IF YOU ARE SENTENCED TO PRISON, YOU WILL NOT

10    BE RELEASED ON PAROLE?

11         DEFENDANT JOHNSON:  YES.

12         THE COURT:  YOU MAY BE SUBJECT TO SUPERVISED

13    RELEASE FOR A NUMBER OF YEARS AFTER YOUR RELEASE FROM

14    PRISON.

15         DO YOU UNDERSTAND THAT IF YOU VIOLATE ANY OF THE

16    TERMS AND CONDITIONS OF SUPERVISED RELEASE, YOU CAN BE GIVEN

17    ADDITIONAL TIME IN PRISON?

18         DEFENDANT JOHNSON:  YES.

19         THE COURT:  IF YOU ARE PRESENTLY ON PROBATION,

20    PAROLE, OR SUPERVISED RELEASE FOR ANOTHER OFFENSE, YOUR PLEA

21    IN THIS CASE COULD RESULT IN THE VIOLATION OF THE TERMS OF

22    THAT PROBATION, PAROLE, OR SUPERVISED RELEASE AND RESULT IN

23    YOUR SERVING MORE TIME THAN YOU OTHERWISE WOULD.

24         DO YOU UNDERSTAND THIS?

25         DEFENDANT JOHNSON:  YES.

```
 1          THE COURT:  HAVE YOU DISCUSSED THE POSSIBLE
 2   PUNISHMENT, THE FACTS AND THE DEFENSES WITH MR. RIDDET?
 3          DEFENDANT JOHNSON:  YES, I HAVE.
 4          THE COURT:  ONE OF THE FACTORS THE COURT WILL
 5   CONSIDER IN SENTENCING YOU IS THE SENTENCING REFORM ACT OF
 6   1984 AND THE UNITED STATES SENTENCING COMMISSION GUIDELINES.
 7          HAVE YOU DISCUSSED THE GUIDELINES WITH MR. RIDDET?
 8          DEFENDANT JOHNSON:  YES, I HAVE.
 9          THE COURT:  HAS HE EXPLAINED TO YOU THE VARIOUS
10   ELEMENTS AND FACTORS THAT THE COURT WILL USE TO ANALYZE YOUR
11   SENTENCE UNDER THE GUIDELINES?
12          DEFENDANT JOHNSON:  YES.
13          THE COURT:  DO YOU UNDERSTAND THAT THE COURT WILL
14   NOT BE ABLE TO DETERMINE THE GUIDELINE SENTENCE FOR YOUR
15   CASE, UNTIL A PRESENTENCE REPORT HAS BEEN PREPARED BY THE
16   PROBATION DEPARTMENT AND YOU AND THE GOVERNMENT HAVE HAD AN
17   OPPORTUNITY TO REVIEW IT AND TO FILE ANY OBJECTIONS YOU MAY
18   HAVE CONCERNING IT?
19          DEFENDANT JOHNSON:  YES.
20          THE COURT:  THE PRESENTENCE REPORT WILL CONTAIN A
21   RECOMMENDED GUIDELINE RANGE.  THERE WILL BE A HIGH AND A LOW
22   TO THAT RANGE.  THAT RANGE IS ENTIRELY ADVISORY.  I'M NOT
23   BOUND BY IT.  THE COURT WILL INDEPENDENTLY CONSIDER BOTH THE
24   PRESENTENCE REPORT AND ANY OBJECTIONS OF THE PARTIES AND
25   WILL ANALYZE YOUR CASE UNDER THE GUIDELINES, TAKING INTO
```

1    ACCOUNT VARIOUS FACTORS, SUCH AS THE NATURE OF THE CHARGES

2    AGAINST YOU; WHAT YOUR PRIOR RECORD, IF ANY, IS; WHETHER YOU

3    HAVE ACCEPTED RESPONSIBILITY AND WHETHER YOU HAVE OBSTRUCTED

4    JUSTICE.

5             DO YOU UNDERSTAND THAT THIS IS THE PROCESS THE

6    COURT WILL GENERALLY FOLLOW IN SETTING YOUR SENTENCE?

7             DEFENDANT JOHNSON:  YES.

8             THE COURT:  DO YOU ALSO UNDERSTAND THAT THE

9    GUIDELINE RANGE IS ONLY ADVISORY AND THE COURT MAY DEPART

10   FROM THE GUIDELINES AND IMPOSE A SENTENCE THAT IS MORE OR

11   LESS SEVERE THAN CALLED FOR BY THE GUIDELINES?

12            DEFENDANT JOHNSON:  YES, I UNDERSTAND.

13            THE COURT:  IN THE END, IT IS THE COURT'S DUTY TO

14   IMPOSE A SENTENCE THAT IS REASONABLE IN LIGHT OF THE

15   GUIDELINES, THE SENTENCING REFORM ACT AND THE FACTS OF THIS

16   CASE.

17            DO YOU UNDERSTAND THAT FOR ALL OF THESE REASONS,

18   NEITHER MR. RIDDET, NOR I CAN TELL YOU TODAY WHICH

19   GUIDELINES APPLY OR WHAT YOUR SENTENCE MAY BE?

20            DEFENDANT JOHNSON:  YES, I UNDERSTAND.

21            THE COURT:  THE PLEA AGREEMENT HAS BEEN FILED IN

22   THIS CASE, AS I HAVE INDICATED.

23            SIR, HAVE YOU READ THE PLEA AGREEMENT?

24            DEFENDANT JOHNSON:  YES, I HAVE.

25            THE COURT:  HAVE YOU DISCUSSED THE PLEA AGREEMENT

```
1    AND ALL OF ITS TERMS WITH MR. RIDDET?

2              DEFENDANT JOHNSON:  YES, I HAVE.

3              THE COURT:  DID YOU SIGN THE PLEA AGREEMENT?

4              DEFENDANT JOHNSON:  YES, I DID.

5              THE COURT:  DO YOU UNDERSTAND THE PLEA AGREEMENT

6    AND ALL OF ITS TERMS?

7              DEFENDANT JOHNSON:  I BELIEVE I DO, YES.

8              THE COURT:  WOULD YOU LIKE ANY ADDITIONAL TIME NOW

9    TO DISCUSS THE PLEA AGREEMENT WITH MR. RIDDET?

10             DEFENDANT JOHNSON:  NO.

11             THE COURT:  AS YOU STAND HERE, DO YOU HAVE ANY

12   QUESTIONS ABOUT WHAT OBLIGATIONS YOU ARE ASSUMING UNDER THE

13   PLEA AGREEMENT?

14             DEFENDANT JOHNSON:  NO.

15             THE COURT:  DO YOU UNDERSTAND THAT THE COURT IS

16   NOT A PARTY TO THE PLEA AGREEMENT AND IS NOT BOUND BY ANY OF

17   ITS TERMS?

18             DEFENDANT JOHNSON:  YES.

19             THE COURT:  AS PART OF THE PLEA AGREEMENT THE

20   GOVERNMENT HAS AGREED TO MAKE CERTAIN RECOMMENDATIONS

21   CONCERNING YOUR SENTENCE.  DO YOU UNDERSTAND THAT THE COURT

22   IS NOT A PARTY TO THE AGREEMENT AND IS NOT BOUND BY ANY

23   RECOMMENDATIONS OR AGREEMENTS SET FORTH IN THE PLEA

24   AGREEMENT?

25             DEFENDANT JOHNSON:  YES, SIR, I UNDERSTAND.
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

1          THE COURT:  THIS MEANS IF I IMPOSE A SENTENCE THAT

2    IS MORE SEVERE THAN YOU ANTICIPATE, YOU WILL NOT BE ABLE TO

3    WITHDRAW YOUR GUILTY PLEA.

4          DO YOU UNDERSTAND THIS?

5          DEFENDANT JOHNSON:  YES, I DO.

6          THE COURT:  THE PLEA AGREEMENT ALSO CONTAINS A

7    WAIVER OF YOUR RIGHT TO APPEAL.

8          MR. STOLPER, WOULD YOU READ THOSE PROVISIONS,

9    PLEASE.

10          MR. STOLPER:  YES, YOUR HONOR.

11          YOUR HONOR, THE DEFENDANT AND THE GOVERNMENT HAVE

12    ENTERED INTO A LIMITED MUTUAL WAIVER OF APPEAL AND OF

13    COLLATERAL ATTACK.  IN THIS WAIVER, THE DEFENDANT HAS GIVEN

14    UP HIS RIGHT TO APPEAL ANY SENTENCE IMPOSED BY THE COURT AND

15    THE MANNER IN WHICH THE SENTENCE IS DETERMINED, PROVIDED

16    THAT THE SENTENCE IS WITHIN THE STATUTORY MAXIMUM SPECIFIED

17    ABOVE AND IS CONSTITUTIONAL, THE COURT IMPOSES A SENTENCE BY

18    APPLYING THE GUIDELINES AND DOES NOT DEPART UPWARD AN

19    OFFENSE LEVEL OR CRIMINAL HISTORY CATEGORY AND DETERMINES

20    THE TOTAL OFFENSE LEVEL IS 23 OR BELOW AND IMPOSES A

21    SENTENCE WITHIN THE RANGE CORRESPONDING TO THE DETERMINED

22    TOTAL OFFENSE LEVEL AND CRIMINAL HISTORY CATEGORY.

23          THE DEFENDANT IS ALSO GIVING UP HIS RIGHT TO BRING

24    A POST-CONVICTION, COLLATERAL ATTACK ON THE CONVICTION OR

25    SENTENCE, EXCEPT A POST-CONVICTION, COLLATERAL ATTACK BASED

1   UPON ANY CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL, NEWLY

2   DISCOVERED EVIDENCE OR RETROACTIVE CHANGE IN THE APPLICABLE

3   SENTENCING GUIDELINES, SENTENCING STATUTES, OR STATUTES OF

4   CONVICTION.

5           THE DEFENDANT DOES RETAIN HIS RIGHT TO APPEAL THE

6   DETERMINATION OF HIS CRIMINAL HISTORY CATEGORY, THE

7   DETERMINATION OF CERTAIN CONDITIONS OF HIS TERMS OF

8   SUPERVISED RELEASE AND THIS COURT'S DETERMINATION OF HIS

9   RESTITUTION.

10          THE COURT:  THANK YOU.

11          SIR, DO YOU UNDERSTAND BY ENTERING INTO THE PLEA

12  AGREEMENT AND PLEADING GUILTY, YOU HAVE AGREED TO GIVE UP

13  YOUR RIGHT TO APPEAL ANY SENTENCE YOU RECEIVE IN ACCORDANCE

14  WITH THE TERMS OF THE PLEA AGREEMENT?

15          DEFENDANT JOHNSON:  EXCEPT AS TO THE RESTITUTION,

16  YOUR HONOR, YES.

17          THE COURT:  RIGHT.  DID YOU DISCUSS WAIVING YOUR

18  RIGHT TO APPEAL WITH MR. RIDDET?

19          DEFENDANT JOHNSON:  YES.

20          THE COURT:  BASED ON THAT CONVERSATION AND HAVING

21  CONSIDERED THE MATTER, DO YOU WISH TO GIVE UP YOUR RIGHT TO

22  APPEAL ON THE TERMS AND CONDITIONS SET FORTH IN THE PLEA

23  AGREEMENT?

24          DEFENDANT JOHNSON:  YES, SIR.

25          THE COURT:  RESTITUTION IS ANTICIPATED?

 1           MR. STOLPER:  IT IS, YOUR HONOR.

 2           THE COURT:  WHAT'S THE PRESENT ANTICIPATED AMOUNT?

 3           DEFENDANT JOHNSON:  THE GOVERNMENT BELIEVES IT'S

 4    IN THE 7 MILLION-DOLLAR RANGE.

 5           THE COURT:  SIR, DO YOU UNDERSTAND THAT WITH

 6    RESPECT TO ANY JUDGMENT OF CONVICTION ENTERED AGAINST YOU,

 7    YOU WILL BE DIRECTED TO MAKE RESTITUTION?

 8           DEFENDANT JOHNSON:  I UNDERSTAND THAT, YOUR HONOR.

 9           THE COURT:  AND DO YOU UNDERSTAND THAT YOU WILL BE

10    DIRECTED TO MAKE RESTITUTION IN THE AMOUNT OF THE ACTUAL

11    LOSS, WHETHER IT'S 7 MILLION, OR LESS, OR MORE?

12           FOR EXAMPLE, IF THE ACTUAL LOSS PROVEN TO ME BY A

13    PREPONDERANCE OF THE EVIDENCE IS 10 MILLION, I WOULD DIRECT

14    YOU TO MAKE RESTITUTION IN THAT AMOUNT.

15           SO, DO YOU UNDERSTAND THAT THE CURRENT ESTIMATE

16    MAY NOT IN FACT BE THE AMOUNT OF RESTITUTION YOU ARE ORDERED

17    TO MAKE?

18           MR. RIDDET:  MAY I HAVE A MOMENT, YOUR HONOR?

19       (PAUSE.)

20           MR. RIDDET:  YOUR HONOR, MAY I JUST ADD SOMETHING

21    TO WHAT YOUR HONOR JUST SAID, BECAUSE I THINK WHAT YOUR

22    HONOR SAID IS NOT QUITE WHAT MR. JOHNSON UNDERSTANDS, NOR IS

23    IT WHAT I UNDERSTAND.

24           WHAT MR. JOHNSON AND I UNDERSTAND IS THAT WITH

25    REGARD TO THE AMOUNT OF RESTITUTION, THAT WE WOULD HAVE THE

1    RIGHT TO ARGUE THAT UNDER THE SPECIAL CIRCUMSTANCES OF THIS

2    CASE, RESTITUTION SHOULD NOT BE ORDERED IN THE AMOUNT OF

3    LOSS AND SHOULD BE LESS FOR HIM.  WHETHER THAT ARGUMENT

4    PREVAILS OR NOT IS, OF COURSE, UP TO YOU.  BUT HE RESERVES

5    THAT RIGHT; AND THAT'S THE REASON HE RESERVED HIS RIGHT TO

6    APPEAL.

7              THE COURT:  I APPRECIATE THAT, BUT I'M NOT ASKING

8    HIM AT THIS TIME TO WAIVE HIS RIGHT TO CONTEST RESTITUTION.

9    HE SPECIFICALLY RESERVED THAT.

10             I SIMPLY WISHED TO INFORM YOU, MR. JOHNSON, ONE,

11   THERE IS A CURRENT ESTIMATE OF $7 MILLION.

12             DO YOU UNDERSTAND THAT?

13             DEFENDANT JOHNSON:  YES, I DO.

14             THE COURT:  AND DO YOU UNDERSTAND THAT YOU WILL BE

15   ORDERED TO MAKE RESTITUTION IN WHATEVER AMOUNT I FIND BY THE

16   PREPONDERANCE OF THE EVIDENCE IS DUE?

17             DEFENDANT JOHNSON:  I'M NOT SURE I UNDERSTAND THE

18   PROCESS IN RELATION TO THIS, BECAUSE --

19             THE COURT:  OKAY.  ONE OF THE ISSUES THAT'S GOING

20   TO BE LITIGATED AS PART OF THE SENTENCING PROCESS IS

21   PRECISELY HOW MUCH RESTITUTION YOU ARE OBLIGATED TO MAKE.

22   FROM WHAT MR. RIDDET HAS SAID, I ASSUME YOUR POSITION IS

23   GOING TO BE THAT IT'S LESS THAN THE GOVERNMENT'S CURRENT

24   ESTIMATE.

25             DEFENDANT JOHNSON:  THAT'S CORRECT.

```
 1              THE COURT:  YOU WILL HAVE THE RIGHT TO PRESENT
 2    THAT POSITION FULLY.  I'LL HEAR MR. RIDDET FULLY ON ANY
 3    FACTS HE PRESENTS, ON ANY LEGAL ARGUMENTS HE PRESENTS AND
 4    DEPENDING ON WHAT HAPPENS, YOU MAY HAVE THE OPPORTUNITY TO
 5    ADDRESS THAT PERSONALLY.
 6              BUT AT THE END OF THE DAY, DO YOU UNDERSTAND I
 7    WILL SET AN AMOUNT OF RESTITUTION?
 8              DEFENDANT JOHNSON:  I UNDERSTAND THAT YOU WILL SET
 9    AN AMOUNT OF RESTITUTION, YES, SIR, BASED ON THE AMOUNT OF
10    LOSSES.  THE PROBLEM THAT I HAVE, I THINK THE AMOUNT OF
11    RESTITUTION, ULTIMATELY, IN MY UNDERSTANDING, WOULD BE BASED
12    ON YOUR DECISION KNOWING ALL THE FACTS AND HEARING ALL THE
13    ARGUMENTS.
14              THE COURT:  HOWEVER I CALCULATE IT, I WILL SET AN
15    AMOUNT OF RESTITUTION.
16              DO YOU UNDERSTAND THAT?
17              DEFENDANT JOHNSON:  I UNDERSTAND THAT, YOUR HONOR.
18              THE COURT:  AND DO YOU UNDERSTAND THAT THE AMOUNT
19    I SET MAY BE MORE THAN THE GOVERNMENT'S ESTIMATE OF
20    $7 MILLION?
21              DEFENDANT JOHNSON:  I UNDERSTAND THAT IT MAY BE
22    MORE OR LESS.
23              THE COURT:  OKAY.  DO YOU FURTHER UNDERSTAND THAT
24    WHATEVER THE NUMBER IS THAT I ESTABLISH AFTER HAVING
25    AFFORDED YOU AND THE GOVERNMENT A FULL AND FAIR OPPORTUNITY
```

1   ON THE ISSUE, YOU WILL HAVE TO PAY THAT AMOUNT?

2               DEFENDANT JOHNSON:  YES, SIR.  SUBJECT TO APPEAL.

3               THE COURT:  CORRECT.  LET ME COME BACK TO YOUR

4   APPELLATE RIGHTS.  BASED ON YOUR DISCUSSION WITH MR. RIDDET

5   AND CONSIDERING THE MATTER, DO YOU WISH TO GIVE UP YOUR

6   RIGHT TO APPEAL ON THE TERMS AND CONDITIONS SET FORTH IN THE

7   PLEA AGREEMENT?

8               DEFENDANT JOHNSON:  YES, SIR.

9               THE COURT:  ARE YOU A CITIZEN OF THE UNITED

10  STATES?

11              DEFENDANT JOHNSON:  YES, SIR.

12              THE COURT:  BY BIRTH?

13              DEFENDANT JOHNSON:  YES.

14              THE COURT:  DO YOU UNDERSTAND THAT A PLEA OF

15  GUILTY MAY DEPRIVE YOU OF VALUABLE CIVIL RIGHTS, SUCH AS THE

16  RIGHT TO VOTE, THE RIGHT TO HOLD PUBLIC OFFICE, THE RIGHT TO

17  SERVE ON A JURY AND THE RIGHT TO POSSESS ANY KIND OF A

18  FIREARM?

19              DEFENDANT JOHNSON:  YES.

20              THE COURT:  DO YOU UNDERSTAND THAT ANY FEDERAL

21  SENTENCE IMPOSED CANNOT RUN CONCURRENTLY WITH ANY STATE

22  SENTENCE THAT IS NOT BEEN IMPOSED AT THE TIME OF YOUR

23  SENTENCING ON THE FEDERAL CRIMES?

24              DEFENDANT JOHNSON:  YES, I UNDERSTAND.

25              THE COURT:  LET ME BE CLEAR.  I DON'T KNOW WHETHER

```
1    YOU ARE SUBJECT TO STATE PROSECUTION CURRENTLY OR NOT.

2              DEFENDANT JOHNSON:  I'M NOT AWARE OF ANY.

3              THE COURT:  WELL, I SIMPLY WISH TO ADVISE YOU IF

4    THERE IS ONE OUT THERE, THE SENTENCE I IMPOSE IN THIS CASE

5    CANNOT RUN CONCURRENTLY, UNLESS THE SENTENCE IN THE STATE

6    CASE HAS ALREADY BEEN IMPOSED.

7              DEFENDANT JOHNSON:  OKAY.  I UNDERSTAND, YOUR

8    HONOR.

9              THE COURT:  OKAY.  HAVE ANY PROMISES BEEN MADE TO

10   YOU IN EXCHANGE FOR YOUR PLEA OF GUILTY, OTHER THAN WHAT'S

11   SET FORTH IN THE PLEA AGREEMENT?

12             DEFENDANT JOHNSON:  NO, THEY HAVEN'T.

13             THE COURT:  HAS ANYONE MADE ANY THREATS AGAINST

14   YOU OR USED ANY FORCE AGAINST YOU, YOUR FAMILY, OR ANYONE

15   NEAR AND DEAR TO YOU TO GET YOU TO PLEAD GUILTY?

16             DEFENDANT JOHNSON:  NO, YOUR HONOR.

17             THE COURT:  ARE YOU PLEADING GUILTY VOLUNTARILY

18   AND OF YOUR OWN FREE WILL?

19             DEFENDANT JOHNSON:  YES.

20             THE COURT:  OTHER THAN WHAT IS CONTAINED IN THE

21   WRITTEN PLEA AGREEMENT, OTHER THAN WHAT'S BEEN STATED HERE

22   IN OPEN COURT AND OTHER THAN A GENERAL DISCUSSION OF THE

23   GUIDELINE RANGE WITH MR. RIDDET, HAS ANYONE MADE ANY PROMISE

24   OF LENIENCY, A PARTICULAR SENTENCE, PROBATION, OR ANY OTHER

25   INDUCEMENT OF ANY KIND TO GET YOU TO PLEAD GUILTY?
```

1          DEFENDANT JOHNSON:  NO.

2          THE COURT:  HAS ANYONE TOLD YOU WHAT SPECIFIC

3   SENTENCE THE COURT WILL IMPOSE IN THE EVENT THE COURT

4   ACCEPTS YOUR PLEA OF GUILTY?

5          DEFENDANT JOHNSON:  NO, YOUR HONOR.

6          THE COURT:  HAVE YOU TOLD MR. RIDDET ALL OF THE

7   FACTS AND CIRCUMSTANCES SURROUNDING ANY STATEMENT,

8   CONFESSION, OR OTHER EVIDENCE THAT WAS OBTAINED FROM YOU BY

9   ANYONE?

10          DEFENDANT JOHNSON:  I BELIEVE SO.  YES.

11          THE COURT:  YOU ARE SURE YOU HAVE TOLD HIM

12   EVERYTHING ABOUT THIS CASE?

13          DEFENDANT JOHNSON:  TO THE BEST OF MY KNOWLEDGE, I

14   HAVE, YES.

15          THE COURT:  MR. STOLPER, WHAT WOULD THE GOVERNMENT

16   PROVE IF THE GOVERNMENT PROCEEDED TO TRIAL?

17          MR. STOLPER:  YOUR HONOR, THE GOVERNMENT WOULD

18   PROVE THE FACTS THAT ARE SPELLED OUT IN THE PLEA AGREEMENT

19   ON PAGES 5, 6 AND 7.  THOSE ARE THE SINGLE-SPACED FACTS.

20   IT'S A LENGTHY FACTUAL BASIS, YOUR HONOR.  I'M HAPPY TO READ

21   IT, IF THE COURT WOULD LIKE.

22          THE COURT:  PLEASE.

23          MR. STOLPER:  DEFENDANT JOHNSON WAS ASKED BY THE

24   DEFENDANT KENNETH KETNER, WHO IS THE CO-DEFENDANT, TO GO TO

25   WORK WITH HIS COMPANY, MORTGAGE CAPITAL RESOURCES, IN 1998.

JOHNSON, A RECENT LAW SCHOOL GRADUATE, HAD KNOWN KETNER

SINCE 1985 AND HAD BEEN BUSINESS DEALINGS WITH HIM ON OR OFF

SINCE THAT TIME.  AS LONG AS JOHNSON HAD KNOWN KETNER,

JOHNSON HAD BEEN A HOME BUILDER AND KETNER WAS A MORTGAGE

BANKER WHO WAS AN EXPERT IN THE HOME LOAN FIELD.

AT THE TIME KETNER ASKED JOHNSON TO GO TO WORK AND

UNTIL MCR WENT OUT OF BUSINESS, KETNER WAS IN COMPLETE

CHARGE OF MCR.  MCR WAS IN THE BUSINESS OF ORIGINATING HOME

LOANS AND THEN FUNDING THEM OFF PREEXISTING WAREHOUSE LINES

OF CREDIT.

KETNER ASKED JOHNSON TO SERVE AS THE CLOSING AGENT

FOR MCR'S ATLANTA, GEORGIA LOAN OFFICE.  KETNER EXPLAINED

THAT MCR'S ATLANTA OFFICE DID A VOLUME BUSINESS IN SMALL 35-

TO $50,000 HOME EQUITY LOANS AND WAS PAYING THEIR PRESENT

CLOSING AGENT $200,000 PER YEAR TO DO MCR'S ATLANTA CLOSING.

KETNER PROPOSED THAT IN EXCHANGE FOR HIS STEERING

MCR'S BUSINESS TO JOHNSON, THAT JOHNSON WOULD SPLIT THE NET

PROFITS FROM THE CLOSINGS BETWEEN HIMSELF, KETNER AND

ANOTHER EMPLOYEE OF MCR.  JOHNSON, KETNER AND THE OTHER MCR

EMPLOYEE DECIDED TO GO FORWARD WITH THE ARRANGEMENT.

JOHNSON ASSOCIATED HIMSELF WITH MCR'S EXISTING

CLOSING ATTORNEY, REDUCED HIS SALARY TO $100,000 AND HAD

THAT ATTORNEY CONTINUE TO CLOSE MCR'S ATLANTA BRANCH LOANS

AS BEFORE.

ALTHOUGH JOHNSON WAS TO SUPPOSED TO SERVE AS A

1   NEUTRAL THIRD PARTY BETWEEN THE LENDERS, INCLUDING MCR AND

2   THE BORROWERS, HE SHARED HIS CLOSING VIEWS WITH KETNER.

3   WHEN JOHNSON FIRST TOOK OVER THE CLOSING DUTIES, THE

4   CLOSINGS WERE DONE IN THE FOLLOWING MANNER:  ONE, ALWAYS

5   WOULD APPLY FOR LOANS FROM MCR; TWO, MCR WOULD REQUEST LOAN

6   FUNDS FROM ONE OF ITS WAREHOUSE LENDERS; THREE, A WAREHOUSE

7   LENDER WOULD WIRE TRANSFER THE REQUESTED FUNDS TO

8   DEFENDANT JOHNSON'S CLIENT TRUST ACCOUNT; AND FOUR, JOHNSON

9   WOULD CONFIRM THE TRANSACTION MET CERTAIN REQUIREMENTS AND

10  DISBURSE THE FUNDS DIRECTLY TO THE BORROWER OR THEIR

11  DESIGNEES.

12        SHORTLY AFTER JOHNSON TOOK OVER THE CLOSING

13  DUTIES, HE AND KETNER CHANGED THE ARRANGEMENT SUCH THAT

14  JOHNSON NO LONGER DISBURSED THE MONEY.  INSTEAD, HE WOULD

15  SEND THE MONEY TO MCR, WHO WAS SUPPOSED TO DISBURSE IT TO

16  BORROWERS.  AS PART OF THIS ARRANGEMENT, KETNER WOULD TELL

17  ONE OF JOHNSON'S EMPLOYEES WHAT MONEY TO WIRE AND WHEN.

18        IN FEBRUARY OR MARCH OF 2000, AS THE LOAN VOLUME

19  INCREASED, IT BECAME CLEAR TO JOHNSON THAT KETNER WAS NOT

20  FUNDING LOANS WITH THE WAREHOUSE LENDER'S MONEY THAT WAS

21  TRANSFERRED FROM HIS ACCOUNT TO MCR'S.  HE LEARNED THIS

22  BECAUSE HE HEARD FROM PEOPLE AT MCR THAT BORROWERS WERE

23  COMPLAINING THAT THEIR CHECKS WERE BOUNCING.  IN MARCH 2000,

24  JOHNSON DRAFTED A LETTER PURPORTEDLY FROM KETNER TO HIMSELF

25  BACKDATED TO MARCH 17TH, 1999 WHICH STATED THAT JOHNSON WAS

```
 1    SUPPOSED TO WIRE THE MONEY HE RECEIVED FROM THE WAREHOUSE
 2    LENDERS TO MCR WHO WOULD FUND THE LOANS.  JOHNSON HAD
 3    KETNER'S ASSISTANCE, SIGNED KETNER'S SIGNATURE ON THE
 4    DOCUMENT, TELLING HER -- IT SHOULD BE "HER" -- THAT KETNER
 5    APPROVED OF HER DOING SO.  JOHNSON DRAFTED THIS LETTER,
 6    BECAUSE HE WAS WORRIED KETNER WOULD DENY HE WAS BEHIND THE
 7    NEW AND THE ILLEGAL FUNDING ARRANGEMENT.  JOHNSON PROVIDED A
 8    COPY OF THE LETTER TO KETNER WHO WAS NOT HAPPY WITH THE FACT
 9    THAT JOHNSON HAD WRITTEN DOWN THE ARRANGEMENT BUT DID NOT
10    DISPUTE THE FACT THAT MCR HAD BEEN RECEIVING THE WAREHOUSE
11    LENDER'S MONEY.
12              ONCE JOHNSON LEARNED THAT KETNER WAS
13    MISAPPROPRIATING THE WAREHOUSE LENDER'S MONEY, HE CONFRONTED
14    KETNER.  KETNER TOLD JOHNSON THERE WAS A PROBLEM WITH THE
15    BANKS AND THAT HE NEEDED TO TIME TO MEET WITH THEM AND WORK
16    THE PROBLEMS OUT.  JOHNSON THEN ASKED HIS IN-HOUSE CPA WHAT
17    WAS GOING ON.  THE IN-HOUSE CPA, WHO HAD ACCESS TO MCR'S
18    ACCOUNT BALANCES, TOLD JOHNSON THAT ALL THE MONEY IN MCR'S
19    FUNDING ACCOUNT WAS GONE, DESPITE THE FACT THERE SHOULD HAVE
20    BEEN MONEY IN THE ACCOUNT TO FUND NUMEROUS HOME EQUITY
21    LOANS.  JOHNSON TOLD KETNER THAT HE WANTED TO CEASE THE FLOW
22    OF MONEY FROM MCR TO ASSESS THE PROBLEM.  IN RESPONSE,
23    KETNER SAID, QUOTE, *DON'T EVEN THINK ABOUT IT, AL,* CLOSE
24    QUOTE.
25              KETNER INSISTED THAT, GIVEN TIME, HE COULD WORK
```

```
1    OUT THE PROBLEMS WITH THE BANKS.  BASED ON THIS PROMISE,
2    JOHNSON CONTINUED TO SEND MONEY DIRECTLY TO MCR'S ACCOUNTS
3    FROM HIS ACCOUNT, RATHER THAN TO CLOSE THE LOANS HIMSELF AS
4    HE WAS OBLIGATED TO DO AS THE CLOSING AGENT.
5         FINALLY, IN JULY OF 2000, JOHNSON SHUT DOWN
6    KETNER'S ABILITY TO WIRE MONEY FROM HIS ACCOUNT.  IN TOTAL,
7    OVER $7 MILLION OF THE MONEY THAT JOHNSON RECEIVED FROM
8    HOUSEHOLD AND WAS WIRED FROM HIS ACCOUNT TO MCR WAS NOT IN
9    TURN USED TO FUND LOANS.
10        DURING THE TIME THAT JOHNSON WAS THE CLOSING
11   AGENT, HE CONTINUED TO SPLIT HIS CLOSING FEES WITH KETNER.
12   NEITHER JOHNSON NOR KETNER WANTED THE MONEY JOHNSON WAS
13   PAYING TO KETNER TO BE TRACED BACK TO JOHNSON.  KETNER ALSO
14   TOLD JOHNSON HE WANTED THE, QUOTE, FLEXIBILITY, CLOSE QUOTE,
15   OF AN OFFSHORE ACCOUNT.  KETNER AND JOHNSON AGREED TO TREAT
16   THE PAYMENTS AS ADVERTISING EXPENSES.
17        JOHNSON LEARNED THAT ATTORNEY -- THAT AN ATTORNEY
18   WORKING IN THE SAME BUILDING THAT HE AND KETNER WORKED IN, 3
19   HUTTON CENTER, IN SANTA ANA, CALIFORNIA, MIGHT BE OF
20   ASSISTANCE IN CONCEALING THE MONEY, SENDING IT OFFSHORE AND
21   REPATRIATING IT IF NECESSARY.  JOHNSON, WITH KETNER'S
22   KNOWLEDGE AND CONSENT, SET UP SHELL COMPANIES CALLED AINSLEY
23   MARKETING ASSOCIATES LIMITED AND SUNBEAM SALES CORP.
24        JOHNSON, AGAIN, WITH KETNER'S KNOWLEDGE AND
25   CONSENT, THEN SET UP BANK ACCOUNTS AT BANK OF NEVES
```

1    INTERNATIONAL LIMITED AND BANK INTERNATIONAL À LUXEMBOURG.

2         ON JUNE 15, 1999, JOHNSON, WITH KETNER'S KNOWLEDGE

3    AND CONSENT, INCORPORATED THE GOOD CORPORATION, A NEVADA

4    CORPORATION.

5         ON JUNE 28TH 1999, THEY INCORPORATED

6    JOC MONET.COM, ALSO A NEVADA CORPORATION.

7         THE NEXT MONTH JOHNSON, WITH KETNER'S PERMISSION,

8    SET UP BANK ACCOUNTS IN THE NAMES OF THESE SHELL COMPANIES

9    AT HERITAGE BANK OF NEVADA.  A NATURAL PERSON HAS TO BE THE

10   SIGNATORY ON THE ACCOUNT.  NEITHER KETNER NOR JOHNSON WANTED

11   TO BE THAT SIGNATORY.  TO RESOLVE THIS PROBLEM, KETNER

12   OBTAINED A FALSE IDENTIFICATION FROM HIS LONG-TIME FRIEND

13   AND BOOKIE.  THE NAME ON THIS IDENTIFICATION AND THE

14   SIGNATORY ON THE ACCOUNTS IS QUOTE, PAUL HERNANDEZ, CLOSE

15   QUOTE.

16        IN JUNE OF 1999, JOHNSON, WITH KETNER'S KNOWLEDGE

17   AND CONSENT, DID A TEST TRANSACTION.  JOHNSON CAUSED A

18   $5,000 CHECK TO BE MADE OUT TO AINSLEY MARKETING ASSOCIATES

19   LIMITED AND TO BE DEPOSITED IN THE NEVES BANK ACCOUNT.

20        ON AUGUST 23, 1999, $200,465 WAS WIRED FROM BANK

21   INTERNATIONAL À LUXEMBOURG TO BOTH THE GOOD CORPORATION AND

22   THE JOC MONET.COM BANK ACCOUNTS AT THE HERITAGE BANK OF

23   NEVADA.

24        OVER A 10-MONTH PERIOD, KETNER AND JOHNSON CAUSED

25   11 CHECKS TO BE WRITTEN TO AINSLEY MARKETING ASSOCIATES

```
 1   LIMITED TOTALING $705,000.  OF THAT MONEY, 526,430 WAS

 2   REPATRIATED TO THE HERITAGE BANK OF NEVADA ACCOUNTS.

 3            JUST SO THE RECORD IS CLEAR, YOUR HONOR, THE

 4   GOVERNMENT EXPECTS ADDITIONAL FACTS MIGHT COME OUT AT TRIAL,

 5   BUT THE GOVERNMENT BELIEVES THAT'S SUFFICIENT AS A FACTUAL

 6   BASIS.

 7            THE COURT:  MR. JOHNSON, DO YOU UNDERSTAND WHAT

 8   THE ASSISTANT UNITED STATES ATTORNEY HAS SAID?

 9            DEFENDANT JOHNSON:  YES, I DO.

10            THE COURT:  IS EVERYTHING THE ASSISTANT UNITED

11   STATES ATTORNEY SAID ABOUT YOU, YOUR CONDUCT AND INTENT TRUE

12   AND CORRECT?

13            DEFENDANT JOHNSON:  YES, IT IS.

14            THE COURT:  DID YOU DO WHAT HE SAID IN HIS

15   STATEMENT?

16            DEFENDANT JOHNSON:  YES, I DID.

17            THE COURT:  ARE YOU PLEADING GUILTY BECAUSE YOU

18   ARE, IN FACT, DID THE FACTS -- DID THE ACTS ALLEGED IN

19   COUNTS TWO THROUGH SEVEN AND 15 OF THE INDICTMENT?

20            DEFENDANT JOHNSON:  YES.

21            THE COURT:  TELL ME IN YOUR OWN WORDS WHAT YOU

22   DID, SIR.

23            DEFENDANT JOHNSON:  I AGREED TO SPLIT CLOSING FEES

24   WITH A NONATTORNEY AND I SET UP OFFSHORE ACCOUNTS AND NEVADA

25   ACCOUNTS AND COMPANIES TO DISGUISE THE PAYMENT.
```

1          AND WHEN I RELEASED THAT MR. KETNER HAD LIED TO ME

2    AND WAS MISAPPROPRIATING MONIES THAT I WAS SENDING HIS

3    COMPANY, I MADE THE FATAL ERROR OF NOT STOPPING THE ACTIVITY

4    AT THE TIME BUT ALLOWING IT TO CONTINUE, IN HOPES THAT HE

5    WOULD BE ABLE TO NEGOTIATE SOMETHING OUT WITH THE BANKS, AND

6    THAT WAS ILLEGAL.

7          THE COURT:  COUNT TWO THROUGH SEVEN REFER TO

8    SPECIFIC -- TO SIX SPECIFIC WIRE TRANSFERS OF FUNDS FROM

9    HOUSEHOLD BANK IN ILLINOIS TO SANWA BANK IN ORANGE COUNTY.

10          DID YOU PARTICIPATE OR IN ANY WAY CAUSE THOSE

11   FUNDS TO BE WIRE-TRANSFERRED?

12          DEFENDANT JOHNSON:  MAY I REVIEW THOSE FOR A

13   SECOND, YOUR HONOR?

14          THE COURT:  SURE.

15      *(PAUSE.)*

16          DEFENDANT JOHNSON:  I DID NOT CAUSE THOSE WIRES TO

17   BE MADE TO MY ACCOUNT, NO.  THOSE WERE MADE BY HOUSEHOLD

18   BANK INTO MY ACCOUNT, YOUR HONOR.

19          THE COURT:  DID YOU IN ANY WAY CAUSE THAT TO

20   HAPPEN?

21          MR. RIDDET:  MAY I HAVE A MOMENT?

22      *(PAUSE.)*

23          DEFENDANT JOHNSON:  I'M SORRY.  IF YOU WOULD LIKE

24   TO RESTATE YOUR QUESTION.

25          THE COURT:  DID YOU IN ANY WAY PARTICIPATE OR

```
 1    CAUSE OR SOLICIT THE FUNDS REFERENCED IN COUNTS TWO THROUGH

 2    SEVEN TO BE TRANSFERRED FROM HOUSEHOLD BANK IN ILLINOIS TO

 3    SANWA BANK IN ORANGE COUNTY?

 4              DEFENDANT JOHNSON:  YES, YOUR HONOR, I WAS AWARE

 5    THAT THOSE FUNDS WOULD BE TRANSFERRED INTO MY ACCOUNT.

 6              THE COURT:  HOW WERE YOU AWARE?

 7              DEFENDANT JOHNSON:  WELL, I KNEW THAT I HAD

 8    AUTHORIZED THE -- THE PROCEDURE TO CONTINUE, AND THE

 9    PROCEDURE AT THAT TIME WAS THAT MCR WOULD INFORM HOUSEHOLD

10    THAT THEY WERE READY TO FUND CERTAIN LOANS AND THAT THOSE

11    FUNDS NECESSARY TO FUND THOSE LOANS WOULD THEN BE WIRED INTO

12    MY ACCOUNT.

13              THE COURT:  IS THE GOVERNMENT SATISFIED WITH THE

14    FACTUAL BASIS FOR THE PLEA?

15              DEFENDANT JOHNSON:  YES, YOUR HONOR.

16              THE COURT:  ARE YOU PLEADING GUILTY BECAUSE YOU

17    ARE IN FACT GUILTY?

18              DEFENDANT JOHNSON:  I AM GUILTY, YOUR HONOR.

19              THE COURT:  MR. RIDDET, HAVE YOU REVIEWED THE

20    FACTS OF THE CASE AND ALL THE DISCOVERY THAT THE GOVERNMENT

21    MAY HAVE PROVIDED TO YOU IN THIS CASE?

22              MR. RIDDET:  I HAVE, YOUR HONOR.

23              THE COURT:  HAVE YOU VIEWED THE FACTS OF THE CASE

24    AND THE DISCOVERY WITH YOUR CLIENT?

25              DEFENDANT JOHNSON:  I HAVE.
```

1          THE COURT:  HAVE YOU ADVISED MR. JOHNSON

2    CONCERNING THE LEGALITY OR THE ADMISSIBILITY OF ANY

3    STATEMENTS OR CONFESSIONS OR OTHER EVIDENCE THE GOVERNMENT

4    MAY HAVE AGAINST HIM?

5          MR. RIDDET:  YES, YOUR HONOR.

6          THE COURT:  IS THE DEFENDANT PLEADING GUILTY

7    BECAUSE OF ANY ILLEGALLY OBTAINED EVIDENCE IN THE POSSESSION

8    OF THE GOVERNMENT THAT YOU ARE AWARE OF?

9          MR. RIDDET:  NO.

10         THE COURT:  DID YOU EXPLORE WITH MR. JOHNSON ANY

11   POSSIBLE DEFENSES HE MAY HAVE?

12         MR. RIDDET:  WE EXPLORED THAT IN DEPTH.

13         THE COURT:  DO YOU BELIEVE THAT THERE IS A FACTUAL

14   BASIS FOR THE PLEA THAT THE DEFENDANT IS OFFERING?

15         MR. RIDDET:  I DO.

16         THE COURT:  HAVE YOU CONFERRED WITH AND ADVISED

17   MR. JOHNSON REGARDING THIS GUILTY PLEA?

18         MR. RIDDET:  YES.

19         THE COURT:  DO YOU BELIEVE THAT THE PLEA IS BEING

20   MADE FREELY AND VOLUNTARILY WITH A FULL UNDERSTANDING OF THE

21   CHARGES AND THE CONSEQUENCE OF THE PLEA?

22         MR. RIDDET:  YES.

23         THE COURT:  THE WRITTEN PLEA AGREEMENT INDICATES

24   THAT IT WAS SIGNED BY YOU AND MR. JOHNSON ON MARCH 14TH,

25   2005; IS THAT CORRECT?

```
 1              MR. RIDDET:  YOU ARE ASKING ME, YOUR HONOR?

 2              THE COURT:  YES.

 3              MR. RIDDET:  THAT IS CORRECT.

 4              THE COURT:  MR. RIDDET, DID MR. JOHNSON SIGN THE

 5    PLEA AGREEMENT IN YOUR PRESENCE?

 6              MR. RIDDET:  YES, HE DID.

 7              THE COURT:  DID YOU DISCUSS THE PLEA AGREEMENT

 8    WITH HIM, PRIOR TO HIS SIGNING IT?

 9              MR. RIDDET:  YES.

10              THE COURT:  HOW EXTENSIVE -- NUMBER OF HOURS,

11    DAYS -- OVER WHAT PERIOD OF TIME WAS YOUR DISCUSSION?

12              MR. RIDDET:  MANY HOURS.  THIS PLEA AGREEMENT WENT

13    THROUGH A NUMBER OF DRAFTS AND MR. JOHNSON AND I HAD

14    ENUMERABLE CONVERSATIONS, I WOULD SAY AT LEAST FOUR OR FIVE

15    HOURS OF DISCUSSIONS ABOUT THE PLEA AGREEMENT AND FINAL

16    TERMS.

17              THE COURT:  OVER HOW MANY DAYS OR WEEKS?

18              MR. RIDDET:  OVER A COUPLE OF WEEKS.

19              THE COURT:  DOES THE PLEA AGREEMENT REPRESENT THE

20    ENTIRE DISPOSITION OF THIS CASE, INSOFAR AS YOU, MR. JOHNSON

21    AND THE UNITED STATES ATTORNEY'S OFFICE IS CONCERNED?

22              MR. RIDDET:  YES, IT DOES.

23              THE COURT:  HAVE THERE BEEN ANY PROMISES OR

24    REPRESENTATIONS OR GUARANTEES MADE EITHER TO YOU OR TO

25    MR. JOHNSON, OTHER THAN WHAT'S CONTAINED IN THE PLEA
```

1    AGREEMENT?

2              MR. RIDDET:  NO, YOUR HONOR.

3              THE COURT:  OTHER THAN WHAT'S CONTAINED IN THE

4    PLEA AGREEMENT, OTHER THAN WHAT HAS BEEN STATED HERE IN OPEN

5    COURT AND OTHER THAN A GENERAL DISCUSSION OF THE GUIDELINES

6    WITH MR. JOHNSON, HAVE YOU MADE ANY INDICATION TO HIM OF

7    WHAT SPECIFIC SENTENCE THE COURT WOULD IMPOSE OR CONVEY TO

8    MR. JOHNSON ANY PROMISE OF A PARTICULAR SENTENCE IN THE

9    EVENT THAT THE COURT ACCEPTS HIS PLEA?

10             MR. RIDDET:  I HAVE GIVEN MY OPINION ON WHAT MIGHT

11   HAPPEN AT SENTENCING, BUT CERTAINLY NO PROMISES.

12             THE COURT:  IN YOUR JUDGMENT, IS IT IN

13   MR. JOHNSON'S BEST INTERESTS AND IN THE INTEREST OF JUSTICE

14   FOR ME TO ACCEPT HIS PLEA?

15             MR. RIDDET:  IT IS, YOUR HONOR.

16             THE COURT:  DO YOU KNOW OF ANY REASON WHY THE

17   COURT SHOULD NOT ACCEPT HIS PLEA?

18             MR. RIDDET:  NONE, WHATSOEVER.

19             THE COURT:  MR. STOLPER, OTHER THAN WHAT IS

20   EXPRESSLY CONTAINED IN THE WRITTEN PLEA AGREEMENT, HAS THE

21   GOVERNMENT MADE ANY OTHER PROMISES, REPRESENTATIONS, OR

22   GUARANTEES TO THE DEFENDANT OR HIS COUNSEL?

23             MR. STOLPER:  NO, YOUR HONOR.

24             THE COURT:  IS THE INTENDED PLEA AGREEMENT PART OF

25   ANY OTHER JOINT AGREEMENT WITH ANY OTHER DEFENDANT OR

1    POTENTIAL DEFENDANT?

2              MR. STOLPER:  NO, YOUR HONOR.

3              THE COURT:  MR. JOHNSON, ARE YOU SATISFIED WITH

4    THE REPRESENTATION THAT MR. RIDDET HAS PROVIDED TO YOU IN

5    THIS CASE?

6              DEFENDANT JOHNSON:  YES, I AM, YOUR HONOR.

7              THE COURT:  DO YOU FEEL THAT HE HAS FULLY

8    CONSIDERED ANY DEFENSE YOU MAY HAVE TO THE CHARGES?

9              DEFENDANT JOHNSON:  YES.

10             THE COURT:  DO YOU BELIEVE THAT HE HAS FULLY

11   ADVISED YOU CONCERNING THIS MATTER?

12             DEFENDANT JOHNSON:  YES.

13             THE COURT:  DO YOU FEEL THAT YOU HAVE HAD ENOUGH

14   TIME TO DISCUSS THIS CASE WITH HIM?

15             DEFENDANT JOHNSON:  YES.

16             THE COURT:  WOULD YOU LIKE ANY ADDITIONAL TIME

17   NOW?

18             DEFENDANT JOHNSON:  NO, SIR.

19             THE COURT:  DID MR. RIDDET OR ANYONE TELL YOU HOW

20   TO ANSWER ANY OF THE QUESTIONS I HAVE ASKED TODAY?

21             DEFENDANT JOHNSON:  NO.

22             THE COURT:  DO YOU FEEL THAT YOU UNDERSTAND

23   EVERYTHING THAT'S GOING ON HERE TODAY, THE CONSEQUENCE TO

24   YOU AND THAT YOU ARE COMPETENT TODAY TO ENTER YOUR PLEA OF

25   GUILTY?

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
1              DEFENDANT JOHNSON:  YES.

2              THE COURT:  DO YOU KNOW OF ANY REASON WHY THE

3   COURT SHOULD NOT ACCEPT YOUR PLEAS OF GUILTY?

4              DEFENDANT JOHNSON:  NO.

5              THE COURT:  DO YOU UNDERSTAND THEN THAT ALL THAT

6   IS LEFT IN YOUR CASE IN THE EVENT THAT I ACCEPT YOUR PLEAS

7   IS THE IMPOSITION OF SENTENCE, WHICH MAY INCLUDE

8   IMPRISONMENT?

9              DEFENDANT JOHNSON:  YES, I UNDERSTAND, YOUR HONOR.

10             THE COURT:  HAVING IN MIND ALL WE HAVE DISCUSSED

11  REGARDING YOUR PLEA OF GUILTY, THE RIGHTS YOU WILL BE GIVING

12  UP AND THE MAXIMUM SENTENCE YOU MIGHT RECEIVE, IS IT STILL

13  YOUR DESIRE TO PLEAD GUILTY?

14             DEFENDANT JOHNSON:  YES, SIR.

15             THE COURT:  HOW DO YOU PLEAD TO COUNT TWO OF THE

16  INDICTMENT?

17             DEFENDANT JOHNSON:  GUILTY.

18             THE COURT:  HOW DO YOU PLEAD TO COUNT THREE OF THE

19  INDICTMENT?

20             DEFENDANT JOHNSON:  GUILTY.

21             THE COURT:  HOW DO YOU PLEAD TO COUNT FOUR OF THE

22  INDICTMENT?

23             DEFENDANT JOHNSON:  GUILTY.

24             THE COURT:  HOW DO YOU PLEAD TO COUNT FIVE OF THE

25  INDICTMENT?
```

1          DEFENDANT JOHNSON:  GUILTY.

2          THE COURT:  HOW DO YOU PLEAD TO COUNT SIX OF THE

3   INDICTMENT?

4          DEFENDANT JOHNSON:  GUILTY.

5          THE COURT:  HOW DO YOU PLEAD TO COUNT SEVEN OF THE

6   INDICTMENT?

7          DEFENDANT JOHNSON:  GUILTY.

8          THE COURT:  HOW DO YOU PLEAD TO COUNT 15 OF THE

9   INDICTMENT?

10          DEFENDANT JOHNSON:  GUILTY, YOUR HONOR.

11          THE COURT:  I'M GOING TO MAKE CERTAIN FINDINGS.

12   IF YOU DON'T UNDERSTAND WHAT I SAY, OR IF YOU DISAGREE WITH

13   WHAT I SAY, OR IF YOU WOULD LIKE TO CONSULT WITH MR. RIDDET,

14   PLEASE STOP ME OR ASK MR. RIDDET TO STOP ME.

15          THE COURT, HAVING QUESTIONED THE DEFENDANT ON HIS

16   COUNSEL AND HIS OFFER TO PLEAD GUILTY TO COUNTS TWO THROUGH

17   SEVEN AND 15 OF THE INDICTMENT, EACH A FELONY, THE DEFENDANT

18   AND HIS COUNSEL HAVING ADVISED THE COURT THAT THEY HAVE

19   CONFERRED CONCERNING THE OFFER PLEAS OF GUILTY AND ALL

20   ASPECTS OF THE CHARGES AGAINST THE DEFENDANT AND ANY

21   DEFENSES HE MAY HAVE AND THE COURT HAVING OBSERVED THE

22   DEFENDANT'S INTELLIGENCE, DEMEANOR AND ATTITUDE WHILE

23   ANSWERING QUESTIONS AND THE COURT HAVING OBSERVED THAT THE

24   DEFENDANT DOES NOT APPEAR TO BE UNDER THE INFLUENCE OF ANY

25   MEDICINE, DRUG, OR OTHER SUBSTANCE OR FACTOR WHICH MIGHT

1    AFFECT HIS ACTIONS OR JUDGMENT IN THIS MATTER, THE COURT

2    NOW, THEREFORE, FINDS THAT THERE IS A FACTUAL BASIS FOR THE

3    PLEA.

4            THE COURT FINDS THAT ALLEN JOHNSON HAS ENTERED HIS

5    PLEA FREELY AND VOLUNTARILY WITH A FULL UNDERSTANDING OF THE

6    CHARGES AGAINST HIM AND THE CONSEQUENCES OF HIS PLEA.  THE

7    COURT FINDS THAT THE DEFENDANT UNDERSTANDS HIS

8    CONSTITUTIONAL AND STATUTORY RIGHTS AND WISHES TO WAIVE

9    THEM.

10           ACCORDINGLY, IT IS ORDERED THAT THE PLEA BE

11   ACCEPTED AND THAT IT BE ENTERED IN THE RECORDS OF THIS

12   COURT.

13           IT'S MY UNDERSTANDING THAT THE PARTIES HAVE AGREED

14   THAT SENTENCING WILL TAKE PLACE ON JANUARY 23, 2006, AT

15   9 A.M.; IS THAT CORRECT?

16           MR. RIDDET:  YES, IT IS, YOUR HONOR.

17           MR. STOLPER:  YES, YOUR HONOR.

18           THE COURT:  SIR, YOU ARE ORDERED TO APPEAR AT THAT

19   TIME AND ON THAT DATE WITHOUT FURTHER ORDER OF THE COURT.

20           DO YOU UNDERSTAND THAT?

21           DEFENDANT JOHNSON:  YES, SIR.

22           THE COURT:  IN THE INTERIM, THE CASE WILL BE

23   REFERRED TO THE PROBATION DEPARTMENT FOR THE PREPARATION OF

24   A PRESENTENCE REPORT.  YOU WILL BE ASKED TO GIVE INFORMATION

25   FOR THE REPORT, AND YOU WILL HAVE AN OPPORTUNITY TO READ THE

```
 1   REPORT AND TO SPEAK AT THE SENTENCING HEARING.  I URGE YOU

 2   TO CONSULT WITH MR. RIDDET THROUGHOUT THIS PROCESS SO THAT

 3   HE CAN ANSWER ANY QUESTIONS YOU MAY HAVE.

 4            IS THE DEFENDANT TO REMAIN FREE OF BOND?

 5            MR. STOLPER:  YES, YOUR HONOR.  THE GOVERNMENT

 6   STIPULATES HE IS NEITHER A DANGER NOR A FLIGHT RISK.

 7            THE COURT:  THE DEFENDANT TO REMAIN FREE ON BOND.

 8            ANYTHING FURTHER THIS MORNING?

 9            MR. RIDDET:  NO, YOUR HONOR.

10            MR. STOLPER:  NO, YOUR HONOR.

11            THE COURT:  THANK YOU VERY MUCH.

12            MR. STOLPER:  THANK YOU, YOUR HONOR.

13         (PROCEEDINGS ADJOURNED.)

14

15                             -OOO-

16

17

18

19

20

21

22

23

24

25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1                        CERTIFICATE

 2           I HEREBY CERTIFY THAT PURSUANT TO SECTION 753,

 3    TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND

 4    CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED

 5    PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE

 6    TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

 7    REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

 8

 9    DATE:  AUGUST 11, 2008

10

11

12                        _____

13                        DEBORAH D. PARKER, OFFICIAL REPORTER

14

15

16

17

18

19

20

21

22

23

24

25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*